**Leon W. PARMA and Barbara B. Parma, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 96–346T.**

United States Court of Federal Claims.

Oct. 13, 1999.

---

7. *See* Ruling on Measure of Damages dated July 14, 1998.

Richard A. Shaw, Shaw & O'Brien, LLP, San Diego, California, for plaintiffs.

Karin Moss, and Ellen C. Specker, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

BASKIR, Judge.

The Parmas, husband and wife, seek to recover Federal income taxes and interest collected by the Internal Revenue Service (IRS) for the 1983 tax year. The government has moved to dismiss, arguing a fatal variance between their amended complaint and the required claim to the IRS. The parties have also filed cross motions for summary judgment on the appropriate statute of limitations.

We conclude there is no fatal variance and so deny the government's motion to dismiss. On the merits, we agree with the government that the later statute-of-limitations (October 16, 1992) applies. We grant its summary judgment motion and deny plaintiffs'.

### Background

The dispute before the Court stems from the Parmas' ownership in a Subchapter S corporation, La Jolla Capital, Inc., (La Jolla) that itself was a partner in a partnership, RAP Investment Company (RAP). The Parmas assert that the government did not make timely assessments on income that flowed from the partnership to the corporation to the Parmas. They argue that a May 3, 1990, agreement which gave the IRS one year to assess the tax in the corporation, governs as

well the income flow from the RAP partnership to the corporation to the Parmas.

The government asserts the La Jolla agreement did not cover the partnership. Rather, another agreement entered into the following year, October 16, 1991, governs income from the partnership. At stake is the timeliness of a remittance credited by the IRS on March 6, after the May 1991 statute of limitations, but within the October 1992 statute of limitations. If the remittance is timely, and we conclude it is, there is still the question whether the IRS may retain it. That issue will be decided at another stage in the proceedings.

### Motion to Dismiss

First, the Court must address the government's motion to dismiss. The government asserts that because there is a "variance" between the claim for refund the Parmas made to the IRS and the Parmas' amended complaint, the Court lacks jurisdiction.

In their IRS claim, the Parmas justified their refund by citing "all applicable statute of limitations." In the letter from counsel accompanying the claim, they cited specifically the October 1992 statute of limitations. The amended complaint, however, relies on the May 1991 statute of limitations. The government's position is that the claim reference was too general, and that counsel's letter differs fatally from the statute of limitations upon which they now rely.

The Court concludes that the claim and amended complaint are not at variance for at least three reasons: The claim reference to "applicable statute of limitations" was sufficient notice; counsel's letter did not serve to limit that notice; and the May 1991 statute of limitations became pertinent only because of the government's theory advanced in its motion for summary judgment filed against the original complaint. This new argument had not been part of the dispute when the claim was filed.

To resolve this issue, it is first necessary to review the history of the remittances, assessments and abatements, as well as the claim, complaint, and subsequent pleadings. The facts are not in dispute.

### Chronology

The story begins sometime prior to October 16, 1984, when the Parmas filed a 1983 Federal income tax return and paid income taxes of $631,384. The return reported income from La Jolla and RAP. The Parmas owned 50% of the stock of La Jolla. La Jolla owned a 90% interest in RAP. The Parmas also owned a 5% interest in RAP through a family trust. The remaining 50% interest in La Jolla and, through a family trust, the remaining 5% interest in RAP, were owned by Ernest Rady.

In 1987, Mr. Parma signed an agreement on behalf of all partners of RAP extending indefinitely the statute of limitations with respect to its 1983 return. Three years later, on May 3, 1990, the IRS and the Parmas entered into a Form 870–S Agreement to Assessment and Collection of Deficiency in Tax for S Corporation Adjustments (Form 870–S), with respect to the Parmas' share of subchapter S items reported on Form 1120S filed by La Jolla for the taxable year 1983. This established for one year, until May 3, 1991, the time open to the IRS to assess taxes.

On October 16, 1991, the IRS and Mr. Parma entered into two Form 870–P(AD), Settlement Agreements for Partnership Adjustments (Form 870–P) for taxable years 1983 and 1984. One was with respect to the Parma family trust's 5% interest in RAP. The other was signed by Mr. Parma as the tax matter person for La Jolla, and was for La Jolla's 90% interest in RAP. The period within which to assess tax related to items which are thus converted from partnership items to non-partnership items pursuant to an 870–P agreement is also one year. 26 U.S.C. § 6229(f); *Crnkovich v. United States*, 41 Fed.Cl. 168 (1998). (Henceforth, references to statutory sections are to the Internal Revenue Code (IRC), 26 U.S.C.)

On November 6, 1991, the Parmas remitted to the IRS $396,297.29. The IRS did not post the remittance until March 6, 1992, and we will refer to this remittance by that latter date. In any case, the remittance came after May 1991, but was within the later statute of limitations. The status of this remittance is the sole remaining issue between the parties.

On September 8, 1992, the IRS assessed the Parmas' 1983 income tax. On October 15, 1992, the IRS issued a revised Form 1902C with respect to the change in the Parmas tax liability for 1983, and on that same day, assessed them additional income tax for the year 1983. These assessments related to income derived directly and indirectly from the Parmas' interest in RAP.

In November and December 1992, the Parmas remitted additional sums. The government later refunded those amounts early in 1999 in the settlement of what the Parmas denoted as Issue A of this litigation.

After reevaluation, the IRS concluded it was mistaken and, in February 1993, abated part of the tax assessment for 1983. Likewise, in March 1993, the IRS abated additional interest for 1983. This had the effect of disavowing the September and October 1992 assessments, a conclusion with which the government later agreed. However, what the IRS gave back with one hand it took again with another. In May 1993, the IRS assessed the Parmas additional income tax for 1983. All these had again to do with RAP-generated income. The May 1993 assessment came well after the October 1992 statute of limitations, a position to which the government later acceded during the course of the litigation.

On March 5, 1994, the Parmas filed a Form 1040X claiming a refund for 1983 of $462,361. The narrative explanation on the 1040X stated in pertinent part that the IRS—

[A]ssessments were made after the expiration of *all applicable statutes of limitation* and the taxpayers are therefore entitled to a refund of their overpayments pursuant to I.R.C. §§ 6401 and 6402. (Emphasis added)

The 1040X did not specify which statute of limitations the Parmas had in mind. The Parmas' counsel, however, submitted a letter with the claim which stated:

Under the provisions of I.R.C. § 6231(b)(1)(c), the partnership items of the partners of RAP became non-partnership items on October 16, 1991, on which date the IRS entered into settlement agreements with each of the partners of RAP. Under I.R.C. § 6229(b) *the period of time during which assessment can be made against the partners expired on October 16, 1992.* (Emphasis added).

The October 16, 1992, date was the only date explicitly asserted as a statute of limitations in the Parmas' claim for refund and the accompanying cover letter. The essence of the government's motion to dismiss is that the claim references to "all applicable statutes of limitation" is too general, and that counsel's letter must be read into the claim. The letter, of course, makes no reference to the May 3, 1991, statute of limitations upon which this litigation now rests.

The IRS disallowed the Parmas' claim for refund by letter dated June 16, 1994. The IRS based its determination on the finding that "An erroneous abatement was done" regarding the Parmas' indirect partnership income. This had reference to the February and March 1993 abatements of the September and October 1992 assessments. By implication, it appeared that the IRS was disavowing the abatements and re-instating the assessments.

The Parmas filed a complaint on June 13, 1996, asserting recovery based on expiration of "all applicable statute of limitation and account stated" theories. They sought refund of the March, November, and December 1992 remittances. The government responded on November 4, 1996, denying or affirming various allegations but offering no particular theory in defense. The Parmas subsequently brought a motion on the pleadings on May 23, 1997, to which the government filed an opposition and the Parmas replied. The government also brought a motion for summary judgment on July 11, 1997. The government asserted that the Parmas' remittances, including the March 6, 1992, remittance, were not made after the properly applicable statute of limitations. It argued that the government could retain voluntary payments based on taxes owed even in the absence of a timely assessment. The briefing was not completed.

Instead, Judge Lydon, then presiding, conducted a status conference by telephone. Unfortunately, it was not recorded and we

cannot therefore reconstruct it for purposes of this opinion. It is clear, however, that the issues and underlying facts had become confused. Judge Lydon therefore issued an Order on March 18, 1998, directing the parties to file an amended complaint and amended answer, and new briefs "to simply the matters at issue and clarify the facts underlying said issues."

The Parmas' April 21, 1998, amended complaint for the first time added the claim that the 1992 remittances were deposits, not payments. This issue will have to be addressed by other pleadings. But of significance for this opinion, the Parmas also contended for the first time explicitly that the period for assessment of tax against them, as shareholders of La Jolla, expired May 3, 1991. Therefore, remittances and assessments subsequent to that date, including the March 6, 1992 remittance, the only remittance still in dispute, are untimely. Paragraph 6 of the Parmas' amended complaint provides:

> On May 3, 1990, the Internal Revenue Service and La Jolla entered into a Form 870–S, Agreement to Assessment and Collection of Deficiency in Tax for S Corporation Adjustments, for the taxable year 1983. As a result, the period of limitations for assessing any tax against the shareholders of La Jolla with respect to RAP items attributable to La Jolla, expired one year later on May 3, 1991.

*The Rule of Variance*

In order to maintain a tax refund action in this Court, the Parmas must comply with section 7422(a), entitled "No suit prior to filing claim for refund," which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regula-

tions of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

The pertinent Treasury Regulation provides that

> the claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprize the Commissioner of the exact basis thereof. Treas. Reg. § 301.6402–2(b)(1).

■ This regulation allows the IRS an adequate opportunity to investigate the legal and factual bases of a claim and resolve it. *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945). The Code and Regulation sections "preclude a taxpayer-plaintiff from substantially varying at trial the factual basis of its arguments from those raised in the refund claims it presented to the IRS." *Ottawa Silica Company v. United States*, 699 F.2d 1124, 1138 (Fed.Cir.1983).

■ The courts have also recognized, however, an informal claim doctrine:

> If the claim for refund states only general grounds for relief, an item raised in litigation but not specifically adverted to on the claim might be permitted if it is found that the taxpayer adequately alerted the Service to the fact that the item is a ground for refund, or that the Commissioner considered that unspecified ground in reaching his decision on the items for which refund was requested.

*Union Pacific Railroad Company v. United States*, 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968).

■ In determining whether there has been adequate notice, the Court may inquire beyond the corners of a taxpayer's claim for refund. Other written communications to the IRS can also supply adequate notice to support litigation under section 7422. *Davis v. United States*, 21 Cl.Ct. 84, 86 (1990).

The government takes the position here, as it commonly does, that the claim notice requires specificity. This is not the position of the Federal Circuit. *Ottawa, Silica*, 699 F.2d at 1138. The rule that guides us requires that the IRS be put on "adequate"

notice. *Edde,* 217 Ct.Cl. 690, 1978 WL 4196, *2–*3. The Parmas' claim did that.

 "A claim for refund must merely put the Commissioner of the Internal Revenue on notice of the ground of the taxpayer's claim that his taxes were erroneously computed; no more particularity than is necessary to do that is required." *National Forge & Ordnance Co. v. United States,* 139 Ct.Cl. 204, 151 F.Supp. 937, 941 (1957) (Court rejected defendant's request to apply a strict requirement of particularity to claim for refund); *Pinckes v. United States,* 7 Cl.Ct. 570, 572 (1985). As long as a ground for refund of income taxes is "comprised within the general language of the claim" this Court will have jurisdiction in a subsequent suit for refund. *Ottawa Silica,* 699 F.2d at 1138.

 The Parmas' assertion in their refund claim that the assessments were made "after the expiration of all applicable statutes of limitations" was broad enough to encompass the allegation that the statute of limitations expired on May 3, 1991, and sufficiently specific under the circumstances to put the IRS on the required notice. There are not that many dates and agreements in play in this dispute. In fact, only two dates were ever involved. The reference effectively put the IRS on notice as to the statute of limitation dates of the agreements it had entered into with the Parmas; namely, May 3, 1991 and October 16, 1992. *See Lockheed Martin Corp. v. United States,* 39 Fed.Cl. 197, 201–202 (1997).

We find compelling the decision in *Edde v. United States,* 217 Ct.Cl. 690, 1978 WL 4196 (1978). In *Edde,* the taxpayers had asserted in their IRS refund claim that they sustained a "business bad debt loss." The IRS disallowed the claim after determining that the transaction in question had resulted in a nonbusiness bad debt, which was treated as short-term capital loss. Neither the taxpayers nor the IRS referred to any specific section of the Code. In their complaint before the Court of Claims, the taxpayers argued alternative theories under either § 165(c)(1)-(2) or § 166. The government moved for summary judgment, arguing that the refund claim only referred, implicitly, to § 166, which deals with bad debts, but not § 165,

which deals with ordinary business loss. The Court disagreed. It found that the language of the taxpayers' refund claim was sufficient to alert the commissioner that the claim might be predicated on both § 165 and § 166. As the Court stated:

> It is another matter when the claim is couched in such terms that the Service might reasonably be able to deduce the existence of more than one legal ground of recovery. In this instance the ground for refund may reasonably be said to be fairly comprised within the refund application.
>
> \* \* \* \* \* \*
>
> Here the wording of the claim straddled sections 165 and 166, referring specifically to neither.

*Id.* at 1978 WL 4196, *2–*3.

The facts before us favor the taxpayers even more than in *Edde.* In *Edde* the taxpayers merely asserted vague language, "business bad debt loss." Yet the Court still found that the refund claim was broad enough, yet definite enough, to have encompassed the two Code sections the taxpayers subsequently relied upon, one addressing business loss and one addressing bad debt. Here, the Parmas' refund claim pointed the IRS to a clear basis of recovery, "all applicable statute of limitations." Given the dealing between the Parmas and the IRS, the IRS should have understood this to refer to only two possible dates.

Moreover, the variance doctrine is only violated when there is a substantial difference between the IRS claim and the suit for refund. *Lockheed Martin Corp.,* 39 Fed.Cl. at 201 ("The statute and regulation establish a rule against 'substantial variance' that precludes a taxpayer from 'substantially varying' at trial the factual or legal grounds for its claims that were (or should have been) set in detail in its refund application"). The Parmas pointed to the statute of limitations and this reference, even without noting the particulars, would be sufficient. The suit for refund is not substantially different from the IRS claim.

The Parmas' counsel's letter is not incorporated into the IRS refund claim for purposes

of limiting a claim which was otherwise sufficient. *Aetna Life Insurance Company v. United States,* 16 Cl.Ct. 364, 372 (1989) ("[T]he court has been unable to find any case law which has divested the court of jurisdiction on the basis of these other documents where a court has found the administrative refund claim to be sufficient by itself").

We also observe that when the Parmas filed their claim, the only "live" issue was the May 1993 assessment. Earlier assessments of September 1992 and October 1992 had been abated. These assessments became potentially part of the controversy only when the claim was denied, and the IRS in the same breath suggested it might seek to revive them by claiming that the abatement had been in error. The Parmas, of course, had no reason to anticipate this shifting ground, and no obligation to anticipate it by including in their claim an anticipatory rebuttal.

■ Likewise, it was not until the government filed its July 11, 1997, motion for summary judgment on the original complaint that the Parmas learned the government's new theory. It now contended it could make an untimely assessment on May 24, 1993, because the March 6, 1992, remittance was timely. Absent this argument, the Parmas' counsel had no reason to raise the earlier limitations period in his letter. Indeed, until the government brought the July 11, 1997, motion, he did not know the government believed it had a right to the March 6, 1992, remittance as a voluntary payment towards tax on RAP income. Taxpayers are not required to inflate the parameters of their refund claims in anticipation of all possible defenses on the part of the Government. *Brown et al. v. U.S.,* 427 F.2d 57, 62 (9th Cir.1970); *Union Pacific Railroad Co. v. U.S.,* 182 Ct.Cl. 103, 389 F.2d 437; *Brown,* 427 F.2d 57 (although taxpayer had not raised ground in IRS claim, government waived variance doctrine by raising new grounds as pre-trial defense).

### Cross Motions for Summary Judgment

With the question of jurisdiction resolved, the Court can turn its attention to the cross motions for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See RCFC 56(c); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986). Each moving party bears the burden of establishing the absence of any disputes of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For our purposes at this juncture, the facts are not in dispute and are fairly straight forward.

However, the case is complicated because it has evolved significantly since it was first filed. The matters in contention have changed, and some controversies have been resolved by settlement, although the formal papers remain unchanged.

In their motion, the Parmas challenged the IRS assessments and retention of remittances. Their August 22, 1998, motion for summary judgment argued that the IRS could not retain remittances made after the expiration of the statute of limitations. This included the remittances of November and December 1992 (Issue A), which had been made after the expiration of even the latest (October 16, 1992) statute of limitations, and that of March 6, 1992 (Issue B). In this latter instance, the Parmas cited the agreement which established the appropriate statute of limitations as May 3, 1991. Because La Jolla owned the interest in RAP, the assessments and remittances relating to RAP were out of time.

The government's cross motion addressed the applicability of the May 3, 1991, statute of limitations, limiting it to La Jolla Subchapter S items. It argued that the October 16, 1992, statute of limitations applied to the RAP items. What the government did not argue was as significant as what it did. The government did not address the timeliness of the November and December 1992 remittances, having sought and been granted an extension of time within which to reply to Issue A. And it did not repeat the claim, made in its original motion for summary judgment back in July 1997, that remittances

made within a statute of limitations may be retained even in the absence of a timely assessment.

After the parties filed their motions, they reached a settlement regarding the remittances made on November 19, 1992, and December 18, 1992. The government conceded they were untimely and refunded them.

The essence of the Parmas' argument is that the La Jolla agreement established the statute of limitations for all pass-through items to it from any other tax entities, such as RAP. At first glance, the theory has a momentary appeal. Unfortunately for the Parmas, they offer nothing in support except declamation. In their opening brief, they simply assert that the La Jolla statute of limitations applies to RAP, but give no citation or authority. In their reply brief, they dispute government arguments but again fail to make an affirmative case for their interpretation. It bears recalling that as the plaintiffs, they have the ultimate burden of persuasion. See *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Sara Lee Corp. v. United States*, 29 Fed.Cl. 330, 334 (1993).

On the other hand, the text of the La Jolla agreement, the Parmas' subsequent conduct, and the logic of the Tax Equity and Fiscal Responsibility Act (TEFRA) (Public Law No. 97–248, 96 stat. 324), all constitute positive reasons for supporting the government's theory.

In deciding which statute of limitations applies, we look first to the text of the May 1990 Form 870–S agreement. The agreement stated:

> This examination does not *reflect* the results of examinations of flow-through entities (Form 1120–S, 1065) in which La Jolla Capital, Inc..... may have an interest. (Emphasis added)

We view the "reservation" provision as limiting the agreement to exclude the results of any examination of entities in which La Jolla has an interest, such as RAP. While the Parmas take issue with the government's interpretation of the word "reflect" as not meaning "apply to" or "encompass," they carefully avoid offering their own definition.

One meaning of "reflect" is to throw back, as with a mirror. We take the provision to have its simple and obvious meaning—the La Jolla agreement affects only the La Jolla originating items, and not those of any other entity, like RAP, flowing to La Jolla. If this provision is not intended to so limit the agreement, it seems extraneous and illogical.

The Parmas would have us read this provision to mean that although the IRS has not examined certain items in RAP, it is willing to forego the tax owed on them, or to limit the time the IRS has to determine that tax. The Parmas should be so lucky. Instead, we view the agreement as stating that it does not encompass the items reported on La Jolla's 1983 Form 1120S representing La Jolla's distributive share of Form 1065 and Form 1120S flow-through entities, partnerships and S corporations, including RAP. The Parmas' indirect 45% interest in RAP, as shareholders of La Jolla, was not included within the scope of the May 1990 agreement. *Crnkovich v. United States*, 41 Fed.Cl. 168, 178 (1998) ("a final determination of the meaning of [a settlement] agreement properly must start with and focus on the words used by the parties in the agreement").

 The general rule is that partnership items are assessed at the partnership level, and it is at the partnership level that tax liability stemming from the partnership items is determined. Following this course, the RAP items were to be determined at the RAP level. § 6221; *Maxwell v. Commissioner*, 87 T.C. 783, 788, 1986 WL 22033 (1986) ("partnership items' must be separated from the partner's personal case and considered solely in the partnership proceeding."); and *Sente Investment Club Partnership of Utah v. Commissioner*, 95 T.C. 243, 1990 WL 129305 (1990) (partnership items must be determined in separate partnership proceedings relating to those entities and not in the proceedings relating to a pass-through partner of the partnership). As the separate partnership proceedings go, so do the statutes of limitation that govern those proceedings.

The May 1990 agreement also contained a "Note: Your return is being accepted as filed. No adjustments are being proposed."

At first glance, this seems inconsistent with the reservation clause. In truth, it is not. The "no adjustment" provision did not preclude revisions to RAP items contained in the La Jolla return. The Court understands the "no change" provision to mean the Parmas' tax liability would not change as far as items reported on the Form 1120S which did not flow through to La Jolla from a partnership or another S corporation.

The RAP examination had been started in July 1986. The computations of the RAP items might change as a result of that examination. What would not change was the way those items would be treated in the La Jolla return. During argument, plaintiffs' counsel stated that even after the May 1990 agreement, the computations in the La Jolla return could still change if required by the RAP examination, notwithstanding the "no adjustment" language. We think his interpretation of the language is correct. But he would limit that period to the May 1991 statute of limitations. Here we part company. We believe that the RAP examination was limited in time by the statute of limitations that applied to its examination, that is, October 1992.

Indeed, Mr. Parma's subsequent conduct buttresses the government's position that the May 3, 1990, Form 870–S did not encompass the Parmas indirect partnership interest in RAP. The two Form 870–P(AD)s entered into on October 16, 1991, encompassed the direct and indirect partnership interests of the Parmas in RAP. Mr. Parma entered one agreement for his family trust 5% interest in RAP, and the other on behalf of La Jolla's 90% interest in RAP. These agreements converted the partnership items of RAP into non-partnership items. § 6231(b)(1)(C). Therefore, under § 6229(f), the IRS had one year, until October 16, 1992, to make assessments with respect to the RAP partnership adjustments.

If Mr. Parma believed the RAP partnership items had been incorporated in the Form 870–S, it is hard to understand why he signed the October 11, 1991, Form 870–P(AD) on behalf of La Jolla. As with such settlement agreements, this had the effect of converting RAP items into non-partnership

items, presumably including the one-year time limit of such agreements. By its terms, it appears to apply to all RAP items flowing to La Jolla. Mr. Parma contends he signed only for the La Jolla owners not a party to the May 1990 agreement. The Court does not accept the argument. Mr. Parma signed as "Tax Matters Person for La Jolla Capital, Inc." There is nothing in the agreement that limits La Jolla's adherence to some, but not other, owners.

Finally, we believe that the Parmas theory is antithetical to the intent and purpose of TEFRA. Prior to TEFRA, proceedings regarding pass-through items were conducted at the taxpayer level. This required the IRS to examine all entities with pass-through items at the same time. As the Parmas acknowledge, TEFRA mandates that proceedings on pass-through items are to be conducted at the entity level rather than at the individual taxpayer level.

In discussing *Sente, supra,* a case offered by the government, the Parmas agree that a Tax Court action may consider only those items relating to the entity in the action, and not those of other entities. They similarly agree that RAP items could only be determined in a RAP examination, and not in a La Jolla audit. While agreeing that the RAP examination could affect the La Jolla return, they maintain that the period during which this may happen is governed by the La Jolla statute of limitations. The Parmas' argument accepts but discounts the government's position that TEFRA's entity-by-entity approach includes as well the statute of limitations that govern those separate treatments. Instead, the Parmas assert that an agreement regarding one entity starts the statutory period running for all interests of that entity.

The Parmas' application of the statutory period would undermine the very purpose of TEFRA. If a proceeding regarding a prime entity started the clock running on all subsidiary entities of the prime, the IRS would be required to examine all constituent entities when it examines a prime. This is essentially a return to the pre-TEFRA situation when the examination of the taxpayer required an examination of all the interests of that tax-

payer at the same time. An entity-by-entity examination only makes sense when each entity enjoys its own limitations period.

### *Conclusion*

For these reasons, the government's motion to dismiss is DENIED; plaintiffs' motion for summary judgment is DENIED; and defendant's motion for summary judgment is GRANTED. The appropriate statute of limitations for determining the consequences of the March 1992 remittance is October 16, 1992.

IT IS SO ORDERED.