# In the United States Court of Federal Claims

No. 10-589
(Filed: March 29, 2013)
**TO BE PUBLISHED**

|  |  |  |
|---|---|---|
| | ) | |
| THE ESTATE OF MORTON LIFTIN, | ) | Estate Tax Refund Claim; Reasonable |
| JOHN LIFTIN, EXECUTOR, | ) | Cause for Late Filing; Reasonable |
| | ) | Reliance on Advice of Counsel; |
| Plaintiff, | ) | Substantial Variance; 26 U.S.C. § 6651; |
| | ) | *United States v. Boyle*, 469 U.S. 241 |
| v. | ) | (1985); *Estate of La Meres v. Comm'r*, 98 |
| | ) | T.C. 294 (1992). |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jonathan Edward Strouse, Holland & Knight, LLP, Chicago, IL, for plaintiff.

Paul Galindo, Trial Attorney, Mary M. Abate, Assistant Chief, David I. Pincus, Chief, Court of Federal Claims Section, Kathryn Keneally, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Before the Court for decision in this tax refund case are the parties' cross-motions for summary judgment. The parties dispute whether the Internal Revenue Service ("IRS") correctly assessed a late-filing penalty. Plaintiff asserts that, since it relied on advice from its attorney that its return was not yet due, its failure to timely file its estate tax return was due to reasonable cause and did not result from willful neglect. *See* Pl.'s Mot. Summ. J. (docket entry 41, May 10, 2012). Defendant asserts that the advice plaintiff received from its attorney did not constitute reasonable cause for plaintiff's late filing. *See* Def.'s Cross-Mot. Summ. J. (docket entry 48, Aug. 2, 2012). For the reasons that follow, the Court **DENIES** the Estate's motion for summary judgment and **GRANTS** the Government's cross-motion.

## I. Background

Morton Liftin (the "Decedent") died on March 2, 2003. Decedent appointed his son, John Liftin ("the Executor"), as the executor of his estate (the "Estate"). Pl.'s Resps. to Def.'s Statement of Material Facts ("Pl.'s Resps. DMF") ¶¶ 1, 3 (docket entry 54, Oct. 2, 2012). Decedent's will provided for direct bequests to, among others, Decedent's surviving spouse, Anna G. Lavandez Liftin ("Mrs. Liftin"), who was a U.S. resident and citizen of Bolivia at the

time of Decedent's death. *Id.* ¶¶ 2, 18. Mrs. Liftin also asserted claims against the Estate arising out of her rights under a prenuptial agreement with Decedent. *Id.* ¶ 2. The Estate refers to those claims as "ancillary matters."

Pursuant to Internal Revenue Code ("I.R.C.") § 6075(a), the Estate was required to file a federal estate tax return (Form 706) by December 2, 2003, nine months after Decedent's death. I.R.C. § 6075(a). Section 6081(a) permits the Secretary to grant a reasonable extension of up to six months for the filing of a return. I.R.C. § 6081(a). The applicable regulations provide that the total allowable time for filing, including extensions, is fifteen months from decedent's death. *Estate of Maltaman v. Comm'r*, 73 T.C.M. (CCH) 2162, at *4 (1997) (citing 26 C.F.R. § 20.6081–1).

The Executor employed his former law partner, John D. Dadakis, to assist with the Estate's federal estate tax return and administration of the Estate's assets, including claims by Mrs. Liftin against the Estate. Decl. of John Liftin ("Liftin Decl.") ¶ 3 (docket entry 41-1, May 10, 2012); Pl.'s Resps. DMF ¶¶ 4–5. Dadakis, who was at that time a partner at the law firm of Morrison & Foerster LLP, has expertise in private wealth services and estate and gift tax planning. Liftin Decl. ¶ 3; Pl.'s Resps. DMF ¶ 4.

In discussions both before and after Decedent died, Dadakis advised the Executor regarding the effect of Mrs. Liftin's citizenship status on the Estate's federal estate tax return. Pl.'s Resps. DMF ¶ 15. In general, the value of property which passes from the decedent to a surviving spouse may be deducted from the value of the estate that is subject to the federal estate tax. I.R.C. § 2056(a). This so-called "marital deduction" is not available, however, if the surviving spouse is not a U.S. citizen. § 2056(d)(1)(A). Nevertheless, if the spouse becomes a citizen before the estate tax return is filed and has been a resident of the United States at all times after the decedent's death and before becoming a citizen, the Estate may take the deduction. § 2056(d)(4). Thus, as Dadakis advised, the Estate could not have taken the marital deduction pursuant to § 2056(a) unless Mrs. Liftin was a U.S. citizen when it filed its return. *See* Dadakis Dep. 38:21–39:4 ("If the estate had filed a federal estate tax return [before Mrs. Liftin became naturalized], we would not have been able to obtain a federal -- a marital deduction. And once filed, we could not go back and amend that return to -- even if she did become a U.S. citizen afterwards."). Dadakis advised the Executor that he had a fiduciary duty to attempt to obtain a marital deduction. *Id.* at 40:1–3.[1]

On November 26, 2003, six days before the Estate's return and taxes were due, the Estate requested a six-month extension of time to file its return and pay the taxes due. Cross-Mot. Ex. C, at 180–82. On January 16, 2004, the IRS granted the Estate's request for an extension of time

---

[1] As an alternative to Mrs. Liftin becoming a citizen, the Estate could have taken a marital deduction pursuant to I.R.C. § 2056A if the property passed to Mrs. Liftin through a so-called "qualified domestic trust" ("QDOT"). Plaintiff states, however, that "because the decedent's property passed outright to Mrs. Liftin . . . , only Mrs. Liftin, at her sole discretion, could transfer or assign the property to a QDOT. . . . Mrs. Liftin never cooperated or voluntarily agreed to transfer the property to a QDOT and, therefore, a QDOT was not available to [p]laintiff." Pl.'s Resps. DMF ¶ 18.

to file, setting a new deadline of June 2, 2004.[2]  Cross-Mot. Ex. D, at 183.  On January 20, 2004, the Estate made a tax payment of $877,300, an amount which the Estate estimated would be sufficient to satisfy the taxes due even if it were unable to claim the marital deduction.  *See* Cross-Mot. Ex. E, at 184; Def.'s Objections and Resps. Pl.'s "Undisputed Facts" ("Def.'s Resps. PMF") 5 (docket entry 50, Aug. 2, 2012).

Thereafter, the Executor and Dadakis became aware that Mrs. Liftin intended to apply for U.S. citizenship.  Liftin Dep. 11:15–21; Dadakis Dep. 90:22–91:4.  The Executor knew, however, that Mrs. Liftin's naturalization process might not be completed before the June 2, 2004 deadline.  Liftin Dep. 16:15–18.  Based on his interpretation of Treasury Regulation § 20.2056A-1(b),[3] Dadakis advised the Estate, in substance, that its late filing in order to claim the marital deduction would not trigger a penalty as long as the return was filed within a reasonable time after Mrs. Liftin became a naturalized U.S. citizen, *see, e.g.*, Liftin Dep. 20:4–9; Dadakis Decl. ¶¶ 12, 16, and other ancillary matters were completed, Liftin Decl. ¶¶ 4, 6, 7; Dadakis Decl. ¶ 17.[4]  The Executor found this advice to be reasonable, particularly because the Estate had already paid more than the amount of tax the Executor believed would ultimately be due.  Liftin Decl. ¶ 4; Liftin Dep. 20:19–21:7.

By June 2, 2004, Mrs. Liftin was not yet naturalized.  *See* Cross-Mot. Ex. F (Mrs. Liftin's Certificate of Naturalization dated Aug. 3, 2005).  Following Dadakis's advice, the Estate did not file a return before the extended deadline of June 2, 2004.  On October 4, 2004, the IRS sent a letter to the Estate inquiring why it had not filed a tax return.  Pl.'s Resps. DMF ¶ 30.  In response, Dadakis wrote the IRS on November 4, 2004, setting forth the Estate's position, as well as his rationale for concluding that Treasury Regulation § 20.2056A-1(b) allowed a late filing in order to claim the marital deduction.  Cross-Mot. Ex. E; *see also* Dadakis Decl. ¶ 14.  Dadakis's letter did not, however, reference his advice that the Estate could wait to file its return until all ancillary matters were completed.  *See* Cross-Mot. Ex. E.  Neither the Estate nor Dadakis received a response from the IRS.  Def.'s Resps. PMF 12.

---

[2] In the same document, the IRS informed the Estate that its request for an extension of time in which to pay had been forwarded to an IRS district officer "for further review."  Cross-Mot. Ex. D, at 183.

[3] Treasury Regulation § 20.2056A-1(b) provides in relevant part:

> For purposes of section 2056(d)(4)(A) . . . , a return filed prior to the due date (including extensions) is considered filed on the last date that the return is required to be filed (including extensions), and a late return filed at any time after the due date is considered filed on the date that it is actually filed.

26 C.F.R. § 20.2056A-1(b).

[4] Neither Liftin nor Dadakis remembers the exact language of Dadakis's advice.  Dadakis Dep. 59:5–16, 125:13–22; Liftin Dep. 19:18–21, 25:17–26:12.  Dadakis confirmed to the Executor on multiple occasions, however, that the Estate's late-filed tax return would not trigger a penalty.  *E.g.*, Liftin Decl. ¶ 4; Liftin Dep. 21:12–18.

3

On August 3, 2005, Mrs. Liftin became a U.S. citizen. Cross-Mot. Ex. F. In February of 2006, the Estate entered into an agreement settling Mrs. Liftin's claims against the Estate. Def.'s Resps. PMF 12–13.

On May 9, 2006, the Estate filed its tax return claiming the marital deduction in the amount of the value of the property passing to Mrs. Liftin and reflecting a tax due of $678,572.25 and an overpayment of $198,727.75. Def.'s Resps. PMF 17, 20. The IRS did not contest the marital deduction, but on June 12, 2006 the IRS issued a Notice of Adjustment reflecting a penalty of $169,643.06 for late filing and late payment pursuant to I.R.C. §§ 6651(a)(1) and 6651(a)(2). Def.'s Resps. PMF 20.

In 2006, the Estate filed a refund claim with the IRS, which the agency denied. *Id.* After an administrative appeal within the agency, the IRS granted a partial refund in the amount of $33,928.61, leaving a claim of $135,714.45. Def.'s Resps. PMF 21. In its administrative appeal, the Estate had argued that the statutes and regulations related to the marital deduction provided reasonable cause for the Estate's late filing:

> 5. By June 2, 2004 (the extended due date for filing Form 706), Mrs. Liftin had indicated that she would like to take advantage of the marital deduction by applying for U.S. citizenship. Under IRC § 2056(d)(4), the disallowance of the marital deduction under IRC § 2056(d)(1) (for property passing to a surviving spouse who is not a U.S. citizen "before the day on which the return of the tax imposed by this chapter is made . . . ." Further, Reg § 20.2056A-1(b) provides that for purposes of IRC § 2056(d)(4)(A), "a late return filed at any time after the due date is considered filed on the date that it is actually filed." Therefore until Mrs. Liftin became a U.S. citizen, the Estate could not file its Federal Estate Tax Return and still utilize the marital deduction under IRC § 2056. By the time citizenship would be granted to Mrs. Liftin, in order to have the marital deduction apply under IRC § 2056, the Estate could only file a late return.
>
> 6. On October 4, 2004, the Internal Revenue Service sent a letter to the Estate to determine why the Estate Tax Return had not been filed. My attorneys replied on November 4, 2004 . . . , stating that the return would not be filed until a determination was made as to Mrs. Liftin's citizenship.

Cross-Mot. Ex. A, at 7.

On September 1, 2010, the Estate filed a complaint in this court seeking a refund of $135,714.45 (docket entry 1). In January 2011, defendant filed a motion for judgment on the pleadings (docket entry 9, Jan. 14, 2011) pursuant to Rule 12(c) of the Rules of the Court of Federal Claims ("RCFC"). The Court denied defendant's motion. *Estate of Liftin v. United States*, 101 Fed. Cl. 604 (2011).

## II.    Standard of Review

A moving party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Thus, any doubt sufficient to create a genuine issue of material fact must be

4

resolved in favor of the party opposing summary judgment. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). When considering cross-motions for summary judgment, courts evaluate each motion on its own merits and deny both motions if there are any genuine disputes over material facts. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987).

A fact is material if it affects the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is not genuine if, were the case to go to trial, no rational trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, a party seeking summary judgment may demonstrate the absence of a genuine dispute by identifying a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court's function, however, is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. Discussion

Section 6651(a)(1) imposes a penalty for failure to file a required return before the statutory or extended deadline unless the taxpayer can establish that such failure was due to reasonable cause and not willful neglect. I.R.C. § 6651(a)(1); *see also United States v. Boyle*, 469 U.S. 241, 244 (1985). The penalty imposes an addition to tax of 5 percent of the estate's tax liability for each month or any fraction thereof that the failure to file continues, but the penalty may not exceed 25 percent. I.R.C. § 6651(a)(1).

The Estate has demonstrated that its failure to file its estate tax return during the fourteen months after the extended deadline but before Mrs. Liftin became a U.S. citizen was due to reasonable cause and not willful neglect. Once Mrs. Liftin was naturalized, however, the Estate waited an additional nine months to file its estate tax return. Its delay in filing after Mrs. Liftin became a U.S. citizen was not due to reasonable cause. Therefore, for the reasons set forth below, the Court **DENIES** the Estate's motion for summary judgment and **GRANTS** the Government's cross-motion for summary judgment.

### A. *The Substantial Variance Doctrine Does Not Bar the Estate's Claim*

Defendant argues that the substantial variance rule divests the Court of jurisdiction over the Estate's claim. Under the substantial variance doctrine, "[a]ny legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citations omitted) (quotation marks omitted). The substantial variance doctrine derives from I.R.C. § 7422(a), which prohibits any lawsuit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." I.R.C. § 7422(a). Treasury Regulation § 301.6402-2(b)(1) states:

> No refund or credit will be allowed . . . except upon one or more of the grounds
> set forth in a claim filed . . . . The claim must set forth in detail each ground upon

which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

26 C.F.R. § 301.6402-2(b)(1). The doctrine applies to both the legal theories and factual bases for plaintiffs' claims. *Lockheed Martin*, 210 F.3d at 1371. The purpose of the statute and regulations is to provide notice to the IRS so that it may investigate and evaluate a taxpayer's claim before it is required to litigate the claim. *See id.* ("The substantial variance rule (1) gives the IRS notice as to the nature of the claim and the specific facts upon which it is predicated; (2) gives the IRS an opportunity to correct errors; and (3) limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend."). Courts have interpreted the substantial variance doctrine to allow plaintiffs to litigate not only those claims specifically raised in the claim for refund, but also those "comprised within the general language of the claim." *Ottawa Silica*, 699 F.2d 1124, 1138 (Fed. Cir. 1983); *Parma v. United States*, 45 Fed. Cl. 124, 129 (1999).

Here, plaintiff's refund claim relied on the theory that the statutes and regulations related to the marital deduction created reasonable cause for plaintiff's late filing. But plaintiff's refund claim did not specifically argue that plaintiff had received legal advice that also constituted reasonable cause for plaintiff's late filing. Defendant asserts that plaintiff's variation in the presentation of its reasonable cause argument is sufficiently substantial to preclude the Court from exercising subject matter jurisdiction over plaintiff's claim.

The Estate has not varied the legal theory upon which it relies. The Estate has consistently asserted that its failure to file timely was due to reasonable cause and not willful neglect. The Estate continued to argue that theory in its refund claim and subsequent appeal within the IRS. Cross-Mot. Ex. A, at 7. The Estate's presentation of its legal theory here relies on an additional fact—that it was receiving advice from Dadakis—that was not necessary to its presentation before the IRS, but the Estate sufficiently alerted the IRS to that fact. The Estate, through Dadakis, first described its theory that its efforts to obtain the marital deduction created reasonable cause for late filing in its letter to the IRS in November 2004. *See* Cross-Mot. Ex. E. Thus, the IRS was on notice as early as 2004 that the Estate was relying on the advice of counsel. *See Parma*, 45 Fed. Cl. at 128 (citing *Davis v. United States*, 21 Cl. Ct. 84, 86 (1990)) ("The Court may inquire beyond the corners of a taxpayer's claim for refund. Other written communications to the IRS can also supply adequate notice to support litigation under section 7422."). As a result, both the Estate's legal theory and the factual basis for that theory were comprised within the general language of its administrative claim for refund.

Plaintiff's claim has relied on the same "reasonable cause" provision of § 6651 at every stage of this dispute. Plaintiff's presentation of its claim here is still based on its interpretation of the marital deduction provisions. Plaintiff's claims in this court do not therefore "substantially" vary from its presentation before the IRS. *Cf. Parma*, 45 Fed. Cl. at 129 (finding that a variation in the plaintiff's presentation of their statute of limitations argument was not so substantial as to violate the substantial variance doctrine); *see also Am. Nat. Bank & Trust Co. v. United States*, 594 F.2d 1141, 1143 n.1 (7th Cir. 1979) ("[T]here is substantial authority that [I.R.C. § 7422 and Treasury Regulation § 301.6402-2(b)(1)] do not require the strictness of common-law pleading or criminal indictment but only require that the statement of facts be reasonably sufficient to

make the Commissioner aware of the nature of the claims; the specific legal formulations of these claims need not be made.").

> B.    *The Estate's Reasonable Cause Defense Does Not Entitle It to a Refund of the Late-Filing Penalty Assessed*

To avoid a penalty for a late-filed return, the taxpayer bears the "heavy burden" of proving its failure to file timely was due to reasonable cause and not willful neglect. *Boyle*, 469 U.S. at 245 (citing I.R.C. § 6651(a)(1)). In order to prove "reasonable cause," a taxpayer must show that it "exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Id.* at 246 (quoting 26 C.F.R. § 301.6651(c)(1)). "Willful neglect" requires a "conscious, intentional failure or reckless indifference." *Id.* at 245.

In *Boyle*, the Supreme Court observed that "[c]ourts have differed over whether a taxpayer demonstrates 'reasonable cause' when, in reliance on the advice of his accountant or attorney, the taxpayer files a return after the actual due date but within the time the adviser erroneously told him was available." 469 U.S. at 251 n.9. The Court's decision in *Boyle* did not resolve those differences. *Id.* The Court did state, however, that:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.

> By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. Among the first duties of the representative of a decedent's estate is to identify and assemble the assets of the decedent and to ascertain tax obligations. Although it is common practice for an executor to engage a professional to prepare and file an estate tax return, a person experienced in business matters can perform that task personally. It is not unknown for an executor to prepare tax returns, take inventories, and carry out other significant steps in the probate of an estate. It is even not uncommon for an executor to conduct probate proceedings without counsel.

*Id.* at 251–52 (citation omitted). In short, the Supreme Court distinguished advice from an attorney involving an interpretation of substantive tax law, which can constitute reasonable cause, from an attorney's assistance in meeting the requirements of unambiguous statutes, which cannot constitute reasonable cause.

The Tax Court has since held that reasonable reliance on the erroneous advice of an attorney regarding the due date of a return can constitute reasonable cause. *Estate of La Meres v. Comm'r*, 98 T.C. 294, 320 (1992). The Tax Court attempted to categorize cases in which reliance on advice of counsel as to the appropriate time for filing can constitute reasonable cause for a late filing. *See id.* at 315–20. It noted that, in cases where the expert did not actually give the advice on which the taxpayer claimed to rely, the taxpayer could not establish reasonable cause. *Id.* at 316. Additionally, the taxpayer could not establish reasonable cause where the taxpayer's reliance on the advice was unreasonable—for example, when the advice did not come from an expert or where the taxpayer did not fully disclose all relevant information. *Id.* Thus, the Tax Court concluded that a taxpayer may demonstrate that its late filing was due to reasonable cause when (a) the taxpayer made full disclosure to an expert, (b) the expert gave advice upon which the taxpayer claims to have relied, (c) the taxpayer relied in good faith on the expert's advice, and (d) the taxpayer did not otherwise know that the return was due. *La Meres*, 98 T.C. at 315–18; *see also Liftin*, 101 Fed. Cl. at 608.[5]

### 1. Dadakis's Advice Constituted Reasonable Cause For the Estate to Delay Filing Until Mrs. Liftin Became a Citizen

Here, the Estate fully disclosed all relevant information to Dadakis, "an attorney with expertise in private wealth services and tax planning." *See* Def.'s Resps. PMF 3. Defendant argues, however, that Dadakis did not actually give the advice plaintiff claims and that the Executor did not rely in good faith on Dadakis's advice because the Executor knew the date on which the return was actually due.

#### a. Dadakis Advised the Estate Not to File a Return Until After Mrs. Liftin Became a Naturalized U.S. Citizen

Both Dadakis and the Executor assert that Dadakis advised the Executor "that a late-filed estate tax return would not trigger a late[-]filing penalty so long as the tax return was filed within a reasonable time after Mrs. Liftin became a naturalized United States citizen and after all ancillary matters were completed." *E.g.*, Dadakis Decl. ¶ 17; Liftin Decl. ¶ 4; *see* Dadakis Dep. 57:13–59:4; Liftin Dep. 20:4–9. In addition, Dadakis's November 2004 letter explained the Estate's reasoning for not filing using substantially the same language he asserts he used when he advised the Executor in 2003 and 2004. *See* Cross-Mot. Ex. E, at 184–85 (explaining his interpretation of I.R.C. § 2056(d)(4) and Treasury Regulation § 20.2056A-1(b) and stating the

---

[5] The Tax Court acknowledged that certain Eighth Circuit cases have held that the erroneous advice of counsel as to the date that the law required the taxpayer to file its return cannot constitute reasonable cause. *See Estate of Kerber v. United States*, 717 F.2d 454, 454 n.1, 455 (8th Cir. 1983) (per curiam); *Smith v. United States*, 702 F.2d 741, 742 (8th Cir. 1983). It traced those results to *Estate of Lillehei v. Comm'r*, 638 F.2d 65 (8th Cir. 1981). *La Meres*, 98 T.C. at 319. The taxpayer in *Lillehei* relied not on an expert's advice, but on an expert to complete the nondelegable duty of filing the return. *Id.* The Tax Court noted that *Boyle* distinguished reliance on expert advice from reliance on an expert to file a return, and, since the later Eighth Circuit cases had not addressed this distinction, the Tax Court found them to be superseded by *Boyle*. *Id.*

Estate "intends to delay the filing of its form 706 until Mrs. Liftin has obtained United States citizenship, such that those assets passing to her from the Decedent's estate will be eligible for the estate tax marital deduction").

Defendant responds only that neither the Executor nor Dadakis could recall Dadakis's precise words of advice. Cross-Mot. 49; *see also* Dadakis Dep. 59:5–16, 125:13–22; Liftin Dep. 19:18–21, 25:17–26:12. Defendant's argument, however, is insufficient to create a genuine issue of material fact regarding Dadakis's advice.

The Estate need not prove the exact words of Dadakis's advice in order to establish reasonable cause, therefore the exact wording of Dadakis's advice is not a material fact. Indeed, defendant does not cite case law, nor could the Court find any, that would require a taxpayer to prove the precise words of legal advice in order to demonstrate reasonable cause. Plaintiff need only show that Dadakis gave the advice in question, and that fact is not in genuine dispute. *See, e.g.*, Liftin Dep. 19:18–21 ("Q. Okay. And do you remember the exact words that he gave you? A. I could give you the substance but not the precise words.").

Defendant implies, however, that plaintiff is taking advantage of the lack of documentation of Dadakis's advice to shape the Executor's and Dadakis's memories of that advice to support plaintiff's litigation strategy. Cross-Mot. 49 ("Plaintiff has failed, however, to establish clear facts to prove that Dadakis *actually gave* the *specific* advice on which plaintiff claims reliance—as opposed to any post-hoc 'advice' that [the Executor] *interpreted* Dadakis as having given.") (emphasis added). To the extent the Government questions the credibility of Dadakis or the Executor or the statements in their declarations, "[d]efendant must present sufficient evidence to support its contention that an issue of credibility exists." *Olszonicki v. United States*, 867 F. Supp. 610, 615 (N.D. Ohio 1994). Defendant has provided no such evidence. Given the lack of evidence to support defendant's conclusion, its argument is insufficient to create a genuine dispute regarding the substance of Dadakis's advice. *See Celotex*, 477 U.S. at 325.[6]

> b.     The Estate Reasonably Relied on Dadakis's Advice Regarding Waiting to File Until After Mrs. Liftin Became a U.S. Citizen

Defendant argues that the Estate's reliance on Dadakis's advice was unreasonable because the Executor was aware of the statutory due date for filing the Estate's return. Cross-Mot. 42–48. But defendant's argument relies on a misrepresentation of the Executor's testimony.

---

[6] It is unclear whether Dadakis advised the Executor that he *should* wait to file or that he *must* wait to file. *Cf.* Dadakis Decl. ¶¶ 12, 16–17. Defendant argues that Dadakis "never advised the Executor that 'the law required' him to wait to file the estate tax return," and that if that had been Dadakis's advice "it would have been simple for those lawyers [Dadakis and the Executor] to [so] swear in their declarations." Reply 8–11. Whether Dadakis advised that the Estate must, or merely should, wait to file its return is, however, not a material fact. To establish reasonable cause for late filing, it is sufficient that Dadakis advised that the Estate *could* file with no penalty.

9

The relevant facts are not in genuine dispute. The Executor was aware that the original statutory due date for filing the Estate's return was December 2, 2003. Liftin Dep. 10:5–8. He was also aware that the IRS approved the Estate's request to extend that deadline until June 2, 2004. Liftin Dep. 14:22–15:3. However, as a result of the advice from Dadakis, Liftin understood the statutory deadline to apply only in the case where there was no reasonable cause to file after that date. Liftin Dep. 16:1–3. In particular, Dadakis advised the Executor that the circumstances the Estate faced—the inability to claim the marital deduction pursuant to I.R.C. § 2056 until after the statutory due date for filing the return—constituted reasonable cause such that the Estate would not be penalized for delayed filing. Liftin Decl. ¶¶ 4, 6–7; Liftin Dep. 20:4–16, 25:13–20. Thus, the Executor knew that the statutory deadlines existed, but believed that they did not apply to the Estate based on advice from Dadakis. *See* Liftin Dep. 19:14–17.[7]

In *La Meres*, the Tax Court stated that a taxpayer's reliance on the advice of counsel could not be reasonable cause for late filing when the taxpayer "otherwise kn[e]w that the return was due." 98 T.C. at 316–17. The Tax Court was describing a category of cases in which taxpayers claimed they failed to timely file returns because the taxpayers relied on an expert's advice that no penalty would be assessed because "no tax liability existed upon which the addition to tax is computed." *Id.* at 316. In those cases, the expert did not give "erroneous advice concerning the proper filing date." *Id.* Since Dadakis gave erroneous advice concerning the proper filing date, this case is not one in which the taxpayer otherwise knew that the return was due.

The undisputed facts establish that the Executor's reliance on Dadakis's erroneous advice was reasonable.[8] Dadakis's advice concerned a substantive question of tax law regarding the interaction between the statutes and regulations providing for the marital deduction and the statutes and regulations setting the deadline for filing the Estate's return. The Executor had no basis to question Dadakis's advice. Liftin Dep. 21:1–7. As the circumstances changed, the Executor continued to ask whether the Estate needed to file sooner, and Dadakis continued to reassure him that the Estate could wait until Mrs. Liftin became a citizen. Liftin Dep. 21:12–19.

---

[7] Defendant also asserts that Dadakis's advice was incorrect. Cross-Mot. 39–41. By describing in detail the reasons Dadakis's advice was incorrect, defendant implies that "reliance on advice from [the Estate's] attorney was not reasonable because [plaintiff] should have known that the advice was erroneous and should have conducted independent research to verify it." *La Meres*, 98 T.C. at 313. Of course, the principle that reliance on expert advice can constitute reasonable cause is only relevant in cases in which a taxpayer relies on incorrect advice. If Dadakis's advice had been correct, and the marital deduction statutes and regulations created reasonable cause for late filing, there would be no need to address whether Dadakis's advice created an independent basis for late filing because the IRS would not have assessed a penalty. Accordingly, *La Meres* holds "that reasonable reliance on the *erroneous* advice of an attorney with respect to the due date of a return can constitute 'reasonable cause' within the meaning of section 6651(a)(1)." *La Meres*, 98 T.C. at 320 (emphasis added).

[8] Whether the elements that constitute "reasonable cause" are present in a given situation is a question of fact, but what elements must be present to constitute "reasonable cause" is a question of law. *Boyle*, 469 U.S. at 249. Here, the elements present are not in genuine dispute.

Moreover, there is no evidence to suggest that the Executor was acting in bad faith. Therefore requiring the Executor to challenge Dadakis would "nullify the very purpose of seeking [his expert advice] in the first place." *See Boyle*, 469 U.S. at 251.

2. Dadakis's Advice Did Not Constitute Reasonable Cause For the Estate to Delay Filing Until All "Ancillary Matters" Were Concluded

In addition to his advice that the marital deduction statutes and regulations created reasonable cause for the Estate to delay filing, Dadakis also advised the Estate that it could delay filing until all ancillary matters were completed. Dadakis Decl. ¶ 17; Liftin Decl. ¶ 4. Dadakis based this advice on his belief that the Estate should wait to file until the Estate had sufficient information to file an "accurate" return.[9] Dadakis Dep. 98:8–18 ("The need to file a federal estate tax return is also the need to file an accurate federal estate tax return. And, therefore, the discussions that we had with John Liftin, especially since we were aware that a refund was due, entailed the idea that we would file a -- the federal estate tax return subsequent to the naturalization of the surviving spouse. And all of the other ancillary information that we needed could be deduced, and then taking time to prepare an accurate federal estate tax return.").[10] As a result, the Estate did not file until it had settled with Mrs. Liftin and Dadakis had prepared a complete and correct return, a process beginning in August of 2005 and ending in May 2006, with the filing of the Estate's tax return. *See* Dadakis Dep. 137:14–16.

Because Dadakis's advice that the Estate could delay filing until it could submit an accurate return was not an interpretation of substantive tax law, it cannot, as a matter of law, constitute reasonable cause for the delay in filing the estate tax return. *See Estate of Young v. United States*, No. 11-11829, 2012 WL 6585327, at *3 (D. Mass. Dec. 17, 2012) ("[T]he Estate had an obligation to file a timely return with the best available information. It cannot claim reasonable cause based on advice that it was necessary to wait for complete information before filing a return."); *Russell v. Comm'r*, 101 T.C.M. (CCH) 1363, at *8 (2011) ("[R]eliance on an

---

[9] Dadakis does not explain how he reached this conclusion, and the law is clear that the need to file an accurate return cannot constitute reasonable cause for late filing. *See, e.g.*, *Randall v. Comm'r*, 74 T.C.M. (CCH) 258, at *3 n.5 (1997) ("Under petitioner's position, as long as a taxpayer did not have all of the information that was needed to prepare a complete, and therefore accurate, return, he or she will never have to file a return and yet will not be liable for the addition to tax under [§] 6651(a)(1). We disagree."); *see also In re Craddock*, 149 F.3d 1249, 1257 (10th Cir. 1998) ("A tax return does not have to be completely accurate, but must be based on the best information available, . . . and may be amended later if necessary.") (citing *Oliver v. Comm'r*, 73 T.C.M. (CCH) 2035, 2051, 1997 WL 66769 (1997); *Estate of Vriniotis v. Comm'r*, 79 T.C. 298, 311, 1982 WL 11136 (1982)).

[10] Dadakis concluded that proceeding in this manner would be "administratively efficient." Cross-Mot. Ex. A, at 7 n.2.

11

attorney's advice that it was necessary to wait for complete information before filing a return does not constitute reasonable cause for a delay in filing.").

## CONCLUSION

The Estate relied on its attorney's advice regarding the deadline to file its tax return such that its failure to file until after Mrs. Liftin became a naturalized United States citizen was due to reasonable cause. However, the Estate did not have reasonable cause to further delay its filing. The Estate filed its estate tax return on May 26, 2006—nine months after Mrs. Liftin became a naturalized U.S. citizen in August of 2005. The addition to tax for failure to file timely reaches the statutory maximum if the delinquency continues longer than four months. *E.g.*, *Russell*, 101 T.C.M. at *8 (citing I.R.C. § 6651(a)). Therefore, plaintiff's nine-month delay without reasonable cause was sufficient to subject plaintiff to the maximum late-filing penalty. The Court therefore **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion for summary judgment.

The Clerk is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED**.

s/ George W. Miller
GEORGE W. MILLER
Judge