**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER KNAPPE, Executor of the Estate of INGBORG PATTEE, deceased, and as Trustee under will of INGBORG PATTEE, dated 07/01/1994, *Plaintiff-Appellant*, | No. 10-56904 D.C. No. 2:09-cv-07328-DMG-PJW |
| v. | OPINION |
| UNITED STATES OF AMERICA, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted
May 9, 2012—Pasadena, California

Filed April 4, 2013

Before: Kim McLane Wardlaw, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Tax

The panel affirmed the district court's grant of summary judgment to the Government in a tax refund action seeking abatement under 26 U.S.C. § 6651(a)(1) of a penalty for filing a late estate tax return.

Taxpayer claimed he was entitled to relief because he relied on his expert accountant, who incorrectly advised him about the deadline for filing the return after obtaining an extension. The panel held that it was taxpayer's duty to ascertain the correct extended filing deadline, and that he failed to exercise ordinary business care and prudence by relying on his accountant's advice about this nonsubstantive matter. Consequently, taxpayer failed to show "reasonable cause" under § 6651(a)(1) to excuse the penalty.

### COUNSEL

Janet L. Everson (argued), Jason Galek, Arthur V. Pearson, and Vincent O'Gara, Murphy Pearson Bradley & Feeney, San Francisco, California, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Carol Barthel (argued), John A. Dudeck, Jr., and Gilbert Steven Rothenberg, United States Department of Justice, Washington, D.C.; and Andrew Thomas Pribe, Office of the United States Attorney, Los Angeles, California, for Defendant-Appellee.

## OPINION

PAEZ, Circuit Judge:

When can you trust your accountant's advice about when your taxes are due? That is the question we face today. Appellant Peter Knappe, acting as the executor of an estate, asked his accountant to apply for an extension of the deadline to file the estate-tax return from the Internal Revenue Service ("IRS"). The accountant told Knappe that the deadline had been extended one year, when in fact it had been extended only six months. Acting on the bad advice, Knappe filed the tax return several months late, and the IRS assessed significant penalties against the estate. Knappe initiated this action in the Central District of California, seeking a refund of the penalty. The district court granted summary judgment to the Government on the ground that Knappe had not shown "reasonable cause" to excuse the penalty, as that term is used in 26 U.S.C. § 6651(a)(1). We affirm.

## I. Background

Ingeborg Pattee died on November 30, 2005, leaving behind a substantial estate. Her will named as the executor of the estate Peter Knappe, a longtime friend and successful businessman. Because Knappe had no prior experience serving as the executor of an estate or preparing an estate-tax

return, he enlisted the help of Francis Burns, a Certified Public Accountant. Burns had worked as a corporate tax accountant for Knappe's company for many years, and Knappe had always been satisfied with his work. In December 2005, Burns told Knappe that the Pattee estate would need to file a United States Estate Tax Return, IRS Form 706. He also correctly informed Knappe that the deadline to file the return was nine months from the date of Pattee's death: August 30, 2006.

At some point before that deadline, Knappe realized he did not have time to obtain real estate appraisals that he needed to prepare the return accurately. Knappe sought Burns's advice about requesting an extension of the filing deadline from the IRS. Burns told Knappe that he could obtain an extension of both the filing and payment deadlines, and that the same extension was available for both deadlines. Knappe authorized Burns to prepare and file IRS Form 4768, an "Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes."

Form 4768 gives taxpayers three options: they can seek an extension of the Form 706 filing deadline, seek an extension of the time to pay any estate tax due, or both. The instructions that accompany Form 4768 explain the difference between the two categories of extensions. The instructions for "Part II, Extension of Time to File Form 706" state that an "executor may apply for an automatic 6-month extension of time to file Form 706." An executor who is "out of the country" may apply for an additional extension in excess of the automatic six months; the instructions warn, however, that "[y]ou cannot combine an application for an automatic extension and an additional extension on the same Form

4768." Finally, the instructions explain that an executor who failed timely to apply for the automatic six-month extension may apply for an "extension for cause." "Unless the executor is out of the country," however, extensions for cause are limited to "6 months from the original due date of the Form 706."

The instructions for "Part III, Extension of Time to Pay" explain that such an extension "may not exceed twelve months" and is granted at the discretion of the IRS. In contrast to extensions of the filing deadline, the IRS may grant up to ten consecutive extensions of the payment deadline—parceled out one year at a time—provided the taxpayer can establish "why it is impossible or impractical for the executor to pay the full amount of the estate tax by the estate tax return due date."

The two types of extensions are thus subject to two different sets of rules. Extensions of the filing deadline are granted automatically for six months, and only foreign executors can seek additional time. Extensions of the payment deadline, on the other hand, are purely discretionary, and the IRS may grant multiple extensions, each as long as a year.

Burns filed Form 4786 on August 30, 2006, applying for the six-month automatic filing extension and a one-year discretionary payment extension.

After filing the completed Form 4768 with the IRS, Burns sent a copy to Knappe. Knappe gave the form a cursory review, but did not examine it in detail. Knappe testified that there was no reason he could not have scrutinized the form, but that he mostly noticed the extension date Burns had

requested, "8/30/2007," and Burns's estimate that the taxes owed would total $1.1 million.

The IRS approved the extension request in writing on January 11, 2007. On the form itself, which the IRS returned to Burns, an IRS agent had hand-written "2/28/07" next to the box Burns had checked to apply for the automatic six-month extension of the filing deadline. A new document, titled "Notice to Applicant," was attached to the returned application. The Notice to Applicant included two sections: the first relating to the application for an extension of the filing deadline, and the second to the application for an extension of the payment deadline. Three checkboxes appeared in both sections: "Approved," "Not approved because," and "Other." None of the boxes was checked in the first section. In the second section, the IRS agent had checked "Approved" and had typed, "TO 8/30/2007 only."

At the time Burns prepared Form 4768, he mistakenly believed that it was possible to request a twelve-month extension of the filing deadline, even though he had read the instructions and reviewed the relevant statutes and Treasury regulations. Before Burns filed the form, he advised Knappe explicitly that he could obtain a twelve-month extension of both the filing and payment deadlines. Knappe testified that he believed that the extension application would extend both the filing and payment deadlines for one year—to August 30, 2007. Knappe's understanding of the deadlines rested entirely on Burns's representations; he made no independent effort to assay the rules. When the IRS approved the automatic six-month extension to the filing deadline and the discretionary one-year extension to the payment deadline, neither Burns nor Knappe realized their mistake.

Convinced that the filing deadline had been extended one year, Knappe elected to wait until May 2007 to file the return, in part to accommodate Burns's busy schedule during tax season. Burns and Knappe worked together to complete the return, and on May 18, 2007, Burns sent Knappe the completed Form 706. Burns also prepared a cover letter for Knappe to send to the IRS, which read, "Enclosed for filing is United States Estate Tax Return Form 706 for the above referenced decedent. The extended payment date/due date of this return is August 30, 2007 as shown on the IRS Form 4768 attached to this return." Knappe filed the return and cover letter on behalf of the estate on May 29, 2007. He also enclosed a check for the balance of the estate tax. Knappe later testified that he could have filed the estate-tax return by February 28, 2007 if he had understood that Burns had only obtained a six-month extension.

Sometime in 2008, the IRS observed that Knappe had filed the estate-tax return after the February 28, 2007 deadline. The agency assessed a 20 percent late-filing penalty for a four-month delinquency, excluding interest, in the amount of $196,414.60.[1] Knappe called Burns to ask why the IRS believed the estate-tax return was late. Burns reviewed the regulations and quickly realized he had made an error. Burns admitted that determining the correct deadline "was not an ambiguous question."

---

[1] The IRS acknowledged in the district court that it improperly computed the penalty. It should have assessed a 15 percent penalty for a three-month delinquency, rather than the 20 percent penalty it imposed. The district court reduced the penalty by $49,103.65. At issue on appeal is the remaining $185,626.71, including interest.

Knappe requested an abatement of the penalty. The Internal Revenue Code excuses late-filing executors from penalties if the failure to file was "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1). Knappe argued that he was entitled to an abatement because his reliance on Burns's erroneous advice was reasonable cause for the late filing. The IRS denied the abatement request. Knappe administratively appealed the IRS's decision, but the IRS denied the appeal. Knappe then paid the full amount due and filed a Claim for Refund with the IRS. When the IRS rejected the claim, Knappe brought this refund action, again alleging that his reliance on Burns constituted reasonable cause.

The Government moved for summary judgment. The district court granted the motion, holding that the existence of reasonable cause under 26 U.S.C. § 6651(a)(1) was an issue of law and that Knappe's reliance on Burns's advice was insufficient to establish reasonable cause. Knappe timely appealed.

We have jurisdiction under 28 U.S.C. § 1291, and "we review de novo both the district court's summary judgment and its interpretation of the Internal Revenue Code." *Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 870 (9th Cir. 2009).

## II. Analysis

### A.

An estate-tax return, Form 706, must be filed within nine months of the decedent's death. 26 U.S.C. § 6075(a); 26 C.F.R. § 20.6075-1. An executor may apply for an

automatic six-month extension of time to file Form 706 by filing Form 4768 on or before the due date of the return and checking the appropriate box. 26 C.F.R. § 20.6081-1(b). While the IRS "may grant a reasonable extension of time for filing any return," "no such extension shall be for more than 6 months" except in the case of taxpayers who are abroad. 26 U.S.C. § 6081(a).

Extensions of the deadline to pay the estate tax operate differently. Treasury Department regulations specify that the IRS may grant an extension of time to pay estate taxes, at the written request of the executor, "for a reasonable period of time, not to exceed 12 months." 26 C.F.R. § 20.6161-1(a)(1).

An executor who fails to file a timely estate-tax return is subject to a penalty. *See* 26 U.S.C. § 6651(a)(1). The late-filing penalty is mandatory when a taxpayer fails "to file any return . . . on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect."[2] *Id.* The penalty amount is five percent of the amount of tax that appears on the return for each month or fraction of a month that the return is late, up to a maximum of 25 percent. *Id.*

---

[2] Because the language of § 6651(a)(1) is conjunctive, a late-failing taxpayer must show both "reasonable cause" and an absence of "willful neglect" to avoid paying a penalty. *See United States v. Boyle*, 469 U.S. 241, 245 (1985) (explaining that a taxpayer seeking to escape a penalty "bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'" (quoting 26 U.S.C. § 6651(a)(1))). The Government does not argue that Knappe's tardiness resulted from willful neglect.

To establish reasonable cause, a taxpayer must prove that he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651-1(c)(1). Knappe's central argument on appeal is that by relying on his expert accountant's advice about the effect of the extension on the deadline for filing the return, he exercised "ordinary business care and prudence" and so had reasonable cause for filing the return three months late.

## B.

Before we turn to that cardinal issue, we must first address Knappe's argument that the reasonableness of his actions is an issue of disputed fact that cannot be appropriately decided on summary judgment.

The Supreme Court has held that "[w]hether the elements that constitute 'reasonable cause' are *present* in a given situation is a question of fact, but what elements *must* be present to constitute 'reasonable cause' is a question of law." *United States v. Boyle*, 469 U.S. 241, 249 n.8 (1985). In this case, the parties do not seriously disagree about the material facts. Knappe insists that factual disputes remain regarding whether Knappe had knowledge of the correct filing deadline and whether Burns advised him about it. Viewing the evidence in the light most favorable to Knappe, however, we simply assume that he had no actual or constructive knowledge of the correct filing deadline and that his uncertainty was the product of Burns's bad advice. What remains is the unambiguously legal question of whether Knappe's actions satisfy the minimum elements of reasonable cause. *See id.*

## C.

### 1.

Cases addressing reasonable cause for late filing of tax returns fall into two general categories. In the first category are cases involving taxpayers who delegate the task of filing a return to an expert agent, only to have the agent file the return late or not at all. The leading case in this category is *Boyle*, 469 U.S. 241. There, Boyle, the executor of his mother's estate, retained an attorney who advised him that an estate-tax return was due but did not mention when it was due. *Id.* Boyle contacted the attorney repeatedly to inquire into the progress of the estate proceedings and the preparation of the return, and was repeatedly assured that the return would be filed "in plenty of time." *Id.* at 242–43 (quotation marks omitted). Eventually, the attorney admitted to Boyle that the return was late because a clerical oversight had caused him to overlook the deadline. *Id.* at 243. The return was filed three months late. The IRS assessed the statutory penalty, and Boyle sued to recover it. *Id.* at 244.

The Supreme Court held that Boyle's reliance on his attorney to file the tax return timely was not reasonable cause for the delay. "Congress has placed the burden of prompt filing on the executor," the Court explained, "not on some agent or employee of the executor." *Id.* at 249. The Court described the taxpayer's "fixed and clear" duty as "an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." *Id.* at 249–50. Delegating the duty of filing to an agent was not within the "very narrow range of situations" in which failing to meet a statutory filing deadline would be excused, because "Congress has charged the executor with an unambiguous,

precisely defined duty to file the return within nine months."
*Id.* at 250. That the executor's agent "was expected to attend
to the matter does not relieve the principal of his duty to
comply with the statute." *Id.* The Court continued:

> Reliance by a lay person on a lawyer is of
> course common; but that reliance cannot
> function as a substitute for compliance with
> an unambiguous statute. . . . It requires no
> special training or effort to ascertain a
> deadline and make sure that it is met. The
> failure to make a timely filing of a tax return
> is not excused by the taxpayer's reliance on an
> agent, and such reliance is not "reasonable
> cause" for a late filing under § 6651(a)(1).

*Id.* at 251–52; *see also Conklin Bros. of Santa Rosa, Inc. v.
United States*, 986 F.2d 315, 316–18 (9th Cir. 1993) (holding
that reasonable cause did not excuse a corporation's late
filing and payment of taxes when the company office
manager failed to make timely filings and payments and
falsified records to disguise her errors from company
management).

In the second category are cases in which a taxpayer relies
on an agent's erroneous advice that no return is due. Courts
have consistently held that such reliance *does* constitute
reasonable cause for delay. Even the *Boyle* court appeared
expressly to endorse such a rule:

> When an accountant or attorney *advises* a
> taxpayer on a matter of tax law, such as
> whether a liability exists, it is reasonable for
> the taxpayer to rely on that advice. Most

taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.

496 U.S. at 250–51 (citations omitted). Cases in this category stand for the principle that the question of whether a return is due is a matter of substantive tax law, and that a taxpayer acts with ordinary business care and prudence when he relies on an expert's answer to that question. *See, e.g.*, *United States v. Kroll*, 547 F.2d 393, 396 (7th Cir. 1977) (holding that "when there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due" but noting that "[w]hether or not the taxpayer is liable for taxes is a question of tax law which often only an expert can answer. The taxpayer not only can, but must, rely on the advice of either an accountant or a lawyer. This reliance is clearly an exercise of ordinary business care and prudence.").

This case does not fall squarely into either category. Knappe neither delegated the task of filing the return to a neglectful agent nor received mistaken advice that no taxes were due. Rather, he personally filed the return after the actual deadline, but within the time that Burns erroneously had assured him was available.

In *Boyle*, the Supreme Court expressly declined to reach the question posed by this case:

> Courts have differed over whether a taxpayer demonstrates "reasonable cause" when, in reliance on the advice of his accountant or attorney, the taxpayer files a return after the actual due date but within the time the adviser erroneously told him was available. We need not and do not address ourselves to this issue.

469 U.S. at 251 n.9 (citations omitted). Our sister circuits have reached contradictory conclusions. *Compare, e.g.*, *Estate of Kerber v. United States*, 717 F.2d 454, 455–56 (8th Cir. 1983) (per curiam) (refusing to find reasonable cause where an executrix's attorney "correctly advised her that it would be necessary to file an estate tax return" but "erroneously believed that the return was due one year," rather than nine months, "after the decedent's death"), *with Estate of Bradley v. Comm'r*, 33 T.C.M. (CCH) 70, 72–73 (1974) (holding that it was "consistent with ordinary business care and prudence for [the executor] to consult a member of an accounting firm which regularly prepared tax returns for advice on the due date of the estate tax return and to rely on the advice he received"), *aff'd*, 511 F.2d 527 (6th Cir. 1975).[3]

---

[3] The Seventh and Third Circuits have taken intermediate positions in cases with analogous, but not identical, facts. In *Fleming v. United States*, 648 F.2d 1122, 1125–27 (7th Cir. 1981), the Seventh Circuit refused to absolve a late-filing taxpayer whose attorney failed to submit an extension application after the taxpayer asked him to do so. In *Sanderling, Inc. v. Commissioner*, 571 F.2d 174, 178–79 (3d Cir. 1978), the Third Circuit held that a corporation's reliance on an accountant's misrepresentations about the due date of corporate income tax returns was reasonable when the "due date was not readily determinable" and the IRS itself was uncertain about the correct due date at trial.

This case is more like the first category than the second because of the Supreme Court's distinction between substantive and nonsubstantive tax advice, *Boyle*, 469 U.S. at 251–52, which we recently recognized in *Baccei v. United States*, 632 F.3d 1140, 1148–49 (9th Cir. 2011). Reading those cases closely, we conclude that the question of when the estate-tax return was due once an extension had been obtained was a nonsubstantive one. For that reason, Knappe did not exercise ordinary business care and prudence when he relied unquestioningly on Burns's advice about the extended deadline, and he unreasonably abdicated his duty to ascertain the filing deadline and comply with it.

## 2.

Given the vagaries of our famously labyrinthine tax laws, one might assume that hiring a tax expert is the quintessence of "ordinary business care and prudence." On this view, a taxpayer who has solicited the services of a qualified professional and supplied him with the necessary information would be insulated from penalties stemming from the agent's mistakes. After all, one hires a tax expert precisely to avoid having to read even the most straightforward IRS prose.

Taxpayers, however, are not exempt from penalty liability for their agents' mistakes in all cases. In *Boyle*, the Court drew a sharp distinction between substantive advice on tax law, on which executors may reasonably rely, and nonsubstantive advice, on which executors may not rely. *See* 469 U.S. at 251 ("When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the *substantive* advice of an accountant or attorney.") (second

emphasis added). The Court also explained that determining the filing date of a tax return is a nonsubstantive matter: "[O]ne does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. . . . It requires no special training or effort to ascertain a deadline and make sure that it is met." *Id.* at 251–52.

The obvious objection is that *Boyle* did not involve a request to extend the default deadline for filing the estate-tax return. It is a simple matter to determine when an estate-tax return is due—the instructions to Form 706 explain the nine-month deadline, under a large heading that reads, helpfully, "When To File." It is harder to work through the rules governing extensions, which distinguish between extensions to the filing deadline and extensions to the payment deadline, as well as between domestic and foreign executors.

Our recent decision in *Baccei* forecloses this objection. That case involved an executor, Baccei, who retained a certified public accountant to prepare and file a federal estate-tax return on behalf of the estate he was administering. 632 F.3d at 1143. The accountant represented to Baccei that he had requested an extension of both the payment and filing deadlines, but in fact had only requested an extension of the filing deadline—he forgot to "check the box indicating that a payment extension was needed" on Form 4768. *Id.* Believing that his accountant had obtained both extensions, Baccei paid the taxes late and incurred a penalty. *Id.*

Seeking relief from the penalty, Baccei cited cases involving former 26 U.S.C. § 6653(a)[4] for the proposition first stated in *Boyle* that "'[w]hen an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice.'" *Id.* at 1148 n.3 (quoting *Henry v. Comm'r*, 170 F.3d 1217, 1220 (9th Cir. 1999)). We distinguished Baccei's cases on the grounds that they "involve[d] a taxpayer's reliance on the advice of tax professionals to take aggressive tax deductions or adopt positions that can be classified as 'reasonably debatable.'" *Id.* (citing *Foster v. Comm'r*, 756 F.2d 1430, 1439 (9th Cir. 1985)). Baccei's penalties could not be excused, we explained, because "the executor does not contend that [his accountant] inaccurately advised him of his liability under the tax code or provided him with substantive advice on a debatable tax position." *Id.*

Knappe attempts to distinguish *Baccei* on the grounds that Burns gave him erroneous *advice* about the extension he obtained, whereas the accountant in *Baccei* failed to request an extension at all. The distinction is without a difference. Both Knappe and Baccei instructed their respective agents to obtain extensions of the filing and payment deadlines. Both cases involved expert advice: both agents wrongly informed their principals that the filing and payment deadlines had been extended to a particular date. And both agents erred: Burns, because he misread the instructions and thought that the extension to the filing deadline was twice as long as was actually granted; and the accountant in *Baccei*, because he did

---

[4] Section 6653 imposed penalties for underpayment of taxes "due to negligence or intentional disregard of rules or regulations." *See* 26 U.S.C. § 6653(a) (1982), *repealed by* Pub. L. No. 101-239, Title VII, § 7721, 103 Stat. 2106, 2399–400 (1989).

not check the appropriate box and was awarded no extension of the payment deadline at all. We see no reason why an executor whose agent misinterpreted Form 4768's instructions should be entitled to a refund, but an executor whose agent filled out Form 4768 improperly should be denied one.

It is undisputed that an executor's reliance on expert advice constitutes reasonable cause in some cases. *See, e.g.*, *Kroll*, 547 F.2d at 396. Taken together, *Boyle* and *Baccei* clarify that an executor's late filing will be excused only if he relied on "substantive" advice about an issue of tax law. *Boyle*, 469 U.S. at 251; *Baccei*, 632 F.3d at 1148 n.3. All we must ask, then, is whether Knappe's reliance on Burns concerned a substantive tax question.

In arguing that Burns's advice about the extended deadline was substantive, Knappe relies heavily on *Estate of La Meres v. Commissioner*, 98 T.C. 294 (1992). In *La Meres*, the estate's representative understood the correct filing deadline for the estate-tax return, but needed additional time. Her lawyer advised her to apply for a six-month automatic extension of the filing deadline and a one-year extension of the payment deadline. *Id.* at 304–05. When the first extended due date for filing the estate-tax return approached, the representative realized she still needed more time, and again sought her lawyer's advice. The lawyer advised her, wrongly, that a second six-month extension of the filing deadline was available by filing a new extension application. *Id.* The IRS denied this second request for an extension but failed to notify the representative, and the estate eventually incurred late-filing penalties. *Id.* at 306, 313. The *La Meres* court held that the representative had shown reasonable cause because she reasonably relied on her attorney's advice that a second

six-month extension was available, explaining that "[a]lthough an extension referred to in [26 U.S.C. §] 6081 is limited to 6 months, the statute does not explicitly state that the Secretary may only grant one extension." *Id.* at 318, 320–21. Thus, the court treated the question of whether multiple filing extensions were available as a substantive one. Knappe argues that his reliance was essentially identical to that of the representative in *La Meres*: like the attorney in *La Meres*, Burns also wrongly advised his client that an additional extension was available.

We disagree that the issue here is substantive. At the time Knappe was preparing the return, the instructions to Form 4768 were unambiguous: they stated that an "automatic 6-month" extension is available, but that "[a]n additional extension is available *only* if you are an executor out of the country" (emphasis added). On the next page, the instructions reiterated the point in equally unambiguous language: "An executor may apply for an automatic 6-month extension of time to file Form 706 . . . . Unless you are an executor out of the country (see below), the maximum extension of time to file is 6 months from the original due date of the applicable return."

The relevant section of the Internal Revenue Code is no more ambiguous: "The Secretary may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months." 26 U.S.C. § 6081 (2006). This language may be unclear about whether a taxpayer can request serial extensions, *see La Meres*, 98 T.C. at 320–21, but Knappe only ever requested a single extension.

We conclude that the question of when a return is due—even when an executor has sought an extension—is nonsubstantive. The deadlines here brook no debate. It was clear from the face of Form 4768, from the corresponding instructions, and from the governing statute that the maximum available extension of the filing deadline was six months. Burns himself testified that the deadline was "unambiguous." *See Boyle*, 469 U.S. at 251 ("[R]eliance cannot function as a substitute for compliance with an unambiguous statute."). The question of how long an extension was available was not a "debatable" one. *Baccei*, 632 F.3d at 1148 n.3 (distinguishing cases that involved substantive advice on debatable tax questions); *cf. Comm'r v. Am. Ass'n of Eng'rs Emp't, Inc.*, 204 F.2d 19, 20–21 (7th Cir. 1953) (excusing a company from a tax penalty where the company relied on an attorney's substantive advice about whether the organization was tax-exempt). For that reason, Knappe cannot show reasonable cause to excuse his late filing.

**3.**

The line between substantive and nonsubstantive advice may not be perfectly bright, but it is surely more luminous than that between "delegation" and "reliance on advice," which many courts have used to distinguish between reasonable and unreasonable taxpayer action. *See, e.g.*, *La Meres*, 98 T.C. at 320. In Knappe's case, classifying his actions as delegation or reliance is simply a matter of framing. On one view, Knappe relied on his accountant's erroneous advice about a deadline. On another view, however, Knappe delegated his duty to obtain an extension to Burns, by allowing Burns to prepare the extension application

and assuming Burns had obtained a one-year extension that was never available.

Instead, we treat the distinction between substantive and nonsubstantive matters as coterminous with the distinction between an executor's delegable and nondelegable duties. We have previously held that certain duties of the executor cannot be reasonably delegated to an agent. *See Conklin Bros.*, 986 F.2d at 319 (observing that a taxpayer cannot rely on the negligence of an agent "to escape responsibility for the nonperformance of nondelegable tax duties"). *Boyle* touched on the boundaries of an executor's nondelegable duty: "Congress intended to place upon the taxpayer an obligation to *ascertain* the statutory deadline and then to meet that deadline, except in a very narrow range of situations." 469 U.S. at 249–50 (emphasis added). We went further in *Baccei*, holding that the executor "was responsible for either identifying the payment deadline and ensuring that payment was made prior to that deadline, or confirming that a payment extension had been properly requested and granted." 632 F.3d at 1149. Knappe was derelict in this duty: he did nothing to confirm that Burns had "properly requested" and obtained the one-year extension of the filing deadline that Burns told him the IRS had awarded. In fact, Burns had done neither: he *improperly* requested a one-year extension, and only obtained a six-month extension.

We reaffirm that an executor may only reasonably rely on an agent's advice about substantive tax matters. *Boyle*, 469 U.S. at 250–51. Ascertaining a deadline is within the ambit of the executor's nondelegable duties, because a deadline is a nonsubstantive matter. So too is confirming that a needed extension has been sought or obtained. It follows that ascertaining the length of any extension so obtained is

equally nondelegable, because ascertaining an extended deadline is no more a substantive matter than ascertaining a default deadline.

As to deadlines, a responsible executor will not allow himself to be misled. When an attorney or accountant tells an executor, "This is the deadline," the executor bears the risk that the advice is wrong. The rule is the same regardless of whether the payment deadline or the filing deadline is at issue, and regardless of whether the agent's erroneous advice results from his misunderstanding of the relevant rules or his negligence in seeking the appropriate extension. Reliance on erroneous advice about nonsubstantive tax law issues cannot constitute reasonable cause for an executor's failure to file a timely return. *See Baccei*, 632 F.3d at 1148 n.3.

## D.

We acknowledge that the result today imposes a heavy burden on executors, who will affirmatively have to ensure that their agents' interpretations of filing and payment deadlines are accurate if they want to avoid penalties. This burden is justified by the government's substantial interest in ensuring that returns are timely filed. *See Boyle*, 469 U.S. at 249.

Moreover, any other result would reward collusion between culpable executors and their agents. In cases like this one, lawyers and accountants would be incentivized to claim that they gave erroneous advice to the executor whether or not they did in fact. The agent who fell on his sword would risk nothing, because the waiver of the penalty would leave the executor without damages. Even in cases in which executors and their agents did not actively collude to

propound a contrived misrepresentation defense, negligent agents would be unilaterally incentivized to persist in giving erroneous advice to their clients, even if they realized their error. *See Sarto v. United States*, 563 F. Supp. 476, 478 (N.D. Cal. 1983) ("If a taxpayer who had been affirmatively misled by his attorney regarding the date on which his return was due could escape liability for a penalty while a taxpayer who was passively negligent could not, the ultimate result would be that attorneys who had engaged in active deceit would escape liability while attorneys who were merely guilty of neglect would not. . . . [T]he statute should not be enforced so as to encourage attorneys who are merely guilty of neglect to compound their error and further delay the filing of a required return by engaging in active deceit of their clients.").

**E.**

It was Knappe's duty to ascertain the correct extended filing deadline. By relying on his accountant's advice about that nonsubstantive matter, he failed to exercise ordinary business care and prudence, and he cannot show reasonable cause to excuse the penalty. We therefore affirm the judgment of the district court.

**AFFIRMED.**