# United States Court of Appeals
# for the Federal Circuit

———————————

**MORTON LIFTIN, the Estate of,
JOHN LIFTIN, Executor,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

———————————

2013-5103

———————————

Appeal from the United States Court of Federal Claims in No. 10-CV-0589, Judge George W. Miller.

———————————

Decided: June 10, 2014

———————————

JONATHAN E. STROUSE, Holland & Knight, LLP, of Chicago, Illinois, argued for plaintiffs-appellants.

JOHN A. NOLET, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were KATHRYN KENEALLY, Assistant Attorney General, and KENNETH L. GREENE, Attorney.

———————————

Before NEWMAN, DYK, and TARANTO, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* TARANTO.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

TARANTO, *Circuit Judge.*

The estate of Morton Liftin and its executor, John Liftin, appeal from a decision of the United States Court of Federal Claims that upheld a penalty assessed by the Internal Revenue Service under 26 U.S.C. § 6651(a)(1) because the executor filed the estate-tax return late. Under the statute, as the case is presented here, the full assessed penalty was mandatory unless advice given by counsel established reasonable cause for not filing the return during a nine-month period from August 2005 to May 2006. The trial court found no reasonable cause. *Estate of Liftin v. United States*, 111 Fed. Cl. 13 (2013). We affirm.

## BACKGROUND

Morton Liftin died on March 2, 2003. Among his survivors was his wife, who at the time was a citizen of Bolivia and not of the United States. John Liftin, the decedent's son, became the executor of the estate.

Although the executor is an attorney, he obtained assistance in administering the estate by retaining his former law partner, who focused in his practice on providing "private wealth services and tax planning." J.A. 134. It is undisputed that the executor needed to file a federal estate-tax return, Form 706, with the Internal Revenue Service. *See* 26 U.S.C. § 6018(a). Under 26 U.S.C. § 6075(a), the general rule is that such returns "shall be filed within nine months after the date of the decedent's death"—here, by December 2, 2003. The statute authorizes the IRS to grant an extension, but strictly limits its length: for taxpayers like the Liftin estate, "no such extension shall be for more than 6 months." 26 U.S.C. § 6081(a). An IRS regulation provides that the estate, if it asks on time, is entitled to "an automatic six-month

extension of time beyond the date prescribed in section 6075(a) to file Form 706." 26 C.F.R. § 20.6081-1(b). On November 26, 2003, the executor timely sought a six-month extension both to file and to pay, and the IRS granted the extension on January 16, 2004. The new deadline to file the estate-tax return (and to pay the estate tax) was June 2, 2004, with no statutory or regulatory authorization for a further extension.

In preparing to file the estate-tax return, the executor and his specialist counsel discussed two uncertainties material to calculating the proper amount of tax due. The principal one was whether and when Mrs. Liftin, the decedent's widow, would become a United States citizen. A executor, in calculating the value of an estate subject to the estate tax, may deduct the value of property that passes to a surviving spouse, but the general precondition for that marital deduction is that the surviving spouse be a citizen of the United States. 26 U.S.C. § 2056(a), (d)(1). A "[s]pecial rule," however, also permits the deduction if "(A) the surviving spouse of the decedent becomes a citizen of the United States before the day on which the return of the tax imposed by this chapter is made, and (B) such spouse was a resident of the United States at all times after the date of the death of the decedent and before becoming a citizen of the United States." *Id*. § 2056(d)(4). Under that provision, specialist counsel advised, the estate could not take the marital deduction unless Mrs. Liftin became a United States citizen before the estate actually filed its return. Mrs. Liftin agreed to apply for United States citizenship, and in February 2004, she contacted a law firm to begin the process.

A second uncertainty affected the estate's preparation for its tax filing. The estate was engaged in litigation with the decedent's widow relating to her rights under a prenuptial agreement and the decedent's will. The parties and the Court of Federal Claims have referred to that litigation as "ancillary matters."

Neither uncertainty had been resolved as of June 2, 2004, the extended due date for paying the tax and for filing the tax return. By then, there was no issue regarding timeliness of payment. In January 2004—which was before the extended June 2004 payment and filing deadline, but after the original, un-extended December 2003 filing deadline—the executor had made an estimated payment to the IRS of $877,300, an amount sufficient to cover the taxes due even if the estate could not claim the marital deduction. J.A. 577. But timely filing of the tax return was an additional, separate obligation. Indeed, the executor did not argue in this case that the payment in January 2004 altered the deadline for filing the return or reduced the penalty for late filing. *See* note 1, *infra*.

Specialist counsel advised the executor that "a late Form 706 could be filed after the extended due date." J.A. 135. In his declaration in this litigation recounting his advice, he stated that he "[b]ased [the advice] on [his] review and analysis of" a regulation that concerns citizenship and the marital deduction. *Id.* He reasoned that "the Regulations allowed for a late return to be filed in order for the [e]state to take advantage of the full marital deduction." *Id.* Counsel's declaration does not recite any basis for delaying the filing beyond the resolution of the citizenship question, but counsel advised the executor that filing could await not only the citizenship decision but also resolution of "other ancillary settlement issues." J.A. 136. *See also* J.A. 231-32 (declaration of John Liftin). The estate does not argue here, or cite to any evidence, that specialist counsel, before June 2004 or later, conveyed to the executor any explanation for the latter part of the advice, *i.e.*, for delaying the filing of the return past the citizenship decision. Relying on counsel's advice that he could wait, the executor did not file Form 706 by June 2, 2004.

Several months after the June 2004 filing deadline had passed, the IRS inquired why the executor had not

filed an estate-tax return. In a letter to the IRS on behalf of the estate, specialist counsel responded that "the Decedent's estate intends to delay the filing of its [F]orm 706 until Mrs. Liftin has obtained United States citizenship," adding: "we will, of course, file the Decedent's Form 706 as soon as the estate is informed of a determination" regarding her application. J.A. 485. The letter, mentioning only the application for naturalization, said nothing about a need to resolve pending litigation. The IRS did not reply to the letter.

The next summer, on August 3, 2005, Mrs. Liftin became a naturalized United States citizen. The executor, however, did not file the estate-tax return as soon as he was informed of the naturalization. Summer turned to fall, and fall to winter. On February 16, 2006, Mrs. Liftin and the estate settled their dispute over "ancillary matters." Still the executor did not file the return immediately. Not until May 9, 2006, did the executor finally file the return. The filing occurred twenty-three months after the extended June 2004 due date and nine months after Mrs. Liftin became a naturalized United States citizen.

The return claimed a marital deduction for the property passed to Mrs. Liftin. On that basis, it stated a tax liability of $678,572.25. J.A. 309. According to the return, therefore, the estate's January 2004 estimated payment of $877,300 exceeded the tax liability, entitling the estate to a refund of $198,727.75. *Id.*

The IRS disagreed, but not with the calculation of tax liability. Rather, it assessed a $169,643.06 late-filing penalty under 26 U.S.C. § 6651(a)(1). After an internal agency appeal, the IRS reduced the penalty to $135,714.45—equal to 25 percent of the tax liability (5 percent for each month the return was late, capped at five months).

In September 2010, the executor, on behalf of the estate, sought recovery of the $135,714.45 late-filing penalty

by initiating this action in the Court of Federal Claims under 26 U.S.C. § 7422(a) and 28 U.S.C. §§ 1346(a)(1), 1491(a). The parties eventually filed cross-motions for summary judgment. They framed the dispositive issue as whether the executor's reliance on the advice of specialist counsel provided reasonable cause for not filing the estate-tax return until May 2006, almost two years after the extended due date of June 2, 2004.

In granting summary judgment for the government, the Court of Federal Claims divided that two-year delay into two periods—the fourteen months up to the August 2005 grant of U.S. citizenship to Mrs. Liftin, and the nine months from then until the May 2006 filing. The court concluded, first, that "the [e]state has demonstrated that its failure to file its estate tax return during the fourteen months after the extended deadline but before Mrs. Liftin became a U.S. citizen was due to reasonable cause." *Liftin*, 111 Fed. Cl. at 18. The court deemed it reasonable in the circumstances for the executor to rely on counsel's specifically explained advice that filing could wait until the citizenship grant (which had to precede filing for the marital deduction to be available). *Id.* at 20-22.

The court drew the opposite conclusion for the remaining nine months: the "delay in filing after Mrs. Liftin became a U.S. citizen was not due to reasonable cause." *Id.* The court found no reasonable cause in the executor's reliance on counsel's advice that filing could be delayed past the citizenship determination—advice that the executor did not argue had been separately explained to him at the time and for which the current explanation was simply that final accurate information would not be available until the "ancillary matters" were resolved. *Id.* at 22-23. Because the "nine-month delay without reasonable cause was sufficient to subject [the estate] to the maximum late-filing penalty," a maximum reached after only five months' of delay without reasonable cause, the Court of Federal Claims granted summary judgment that

the IRS correctly assessed the entire late-filing penalty under section 6651(a)(1). *Id.* at 23.

After the denial of reconsideration, *id.* at 23-24, the estate timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We review the grant of summary judgment by the Court of Federal Claims without deference. *Am. Capital Corp. v. FDIC*, 472 F.3d 859, 865 (Fed. Cir. 2006).

## DISCUSSION

The Internal Revenue Code establishes a strict penalty regime for the late filing of estate-tax returns, applicable even when full payment is made on time. For each month that a federal estate-tax return is late, the IRS must impose a penalty of five percent of the tax due (up to a limit of 25 percent) "unless it is shown that [the failure to file on time] is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1); *see United States v. Boyle*, 469 U.S. 241, 244 (1985). Because the aggregate penalty may not exceed 25 percent of the tax due, it takes only five months to reach the maximum penalty. Nine months elapsed after Mrs. Liftin became a citizen in August 2005 before the executor filed an estate-tax return in May 2006. We conclude that the executor lacked reasonable cause for the delay in filing during that period. Though fully able to file, he simply relied on the advice of counsel that he should wait to file until the resolution of various "ancillary" matters—advice for which he obtained no explanation and that rested on the unreasonable assumption that incompleteness of information justified delay in filing. Our conclusion as to this nine-month period supports the full penalty assessed, so we need not address the period before August 2005.[1]

---

[1]　Neither in the trial court nor in its appeal to this court did the estate dispute the IRS's use of the full tax

The Supreme Court addressed aspects of the "reasonable cause" requirement in *Boyle*. That case involved a taxpayer's simple delegation of the filing task to counsel, which the Court held was not reasonable. 469 U.S. at 251-52. In the course of so holding, the Court noted authorities that had found reasonable cause for a taxpayer to rely on counsel's advice that no return need be filed at all, which typically is a matter not of dates but of whether threshold requirements for filing are met. *Id.* at 250. The Court identified as a distinct issue the question of when legal advice about the due date of a return constitutes reasonable cause, noted that courts had drawn disparate conclusions about that issue, and expressly declined to address it. *Id.* at 251 n.9.

---

due as the base to be multiplied by 5 percent per month, without subtracting the amount paid to the IRS in January 2004—an amount that, if subtracted, would eliminate the penalty because it exceeds the tax ultimately found to be due. 26 U.S.C. § 6651(b)(1) directs the IRS to subtract from the base "the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax." The IRS found that directive inapplicable to the January 2004 payment—because it was made after the original, un-extended December 2003 due date, though before the extended June 2004 due date. It relied on 26 U.S.C. § 6151(c), which states that certain language in Title 26 referring to a date fixed for payment should be read to refer to "the last day fixed for such payment (*determined without regard to any extension of time for paying the tax*)." (Emphasis added.) The panel *sua sponte* requested and received supplemental briefs on the correctness of the IRS's view. The panel majority now declines to address the question. We see insufficient reason, in the circumstances here, to depart from the important rules requiring timely presentation and development of issues.

Today we address one aspect of that issue. We conclude, in agreement with the Court of Federal Claims, that the legal advice given to the executor on the timing of the estate's return did not supply reasonable cause for the post-August 2005 delay, because that advice—which in this case was unexplained to the executor—rested on an assumption that is not legally reasonable. That conclusion requires affirmance of the summary judgment upholding the penalty imposed.

Our focus is on the basis—rather, the lack of a legally reasonable basis—for the advice. We begin with an IRS regulation, 26 C.F.R. § 1.6664-4(c), that, though not directly applicable, addresses an issue closely related to the issue of "reasonable cause" under 26 U.S.C. § 6651(a)(1) in this case. Under 26 U.S.C. § 6662(a), penalties are mandated for certain underpayments of tax, but the penalties are eliminated by 26 U.S.C. § 6664(c) where the taxpayer has "reasonable cause" for the underpayment. The IRS has promulgated a regulation that addresses "reasonable cause" under that provision. 26 C.F.R. § 1.6664-4. One part of that regulation says that, in order for a taxpayer's reliance on the advice of counsel (or other specialized professional) to constitute "reasonable cause," the "advice must not be based on unreasonable factual or legal assumptions." *Id.* § 1.6664-4(c)(1)(ii).

The closest regulatory articulation of what constitutes "reasonable cause" thus excludes advice that depends on legal assumptions that are outside the range of the reasonable. Even if all factual assumptions are correct, the regulation bars a defense of reliance on professional advice if the advice depends on legal assumptions that are simply unreasonable. This approach looks at the substance of the advice offered, not just the qualifications of the adviser, and demands that it rise above a threshold level of reasonableness (though, by assumption, the advice was incorrect). We so recognized when we observed that, under the regulation, "[t]he reasonableness of

any reliance turns on the quality and objectivity of the advice." *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010); *see also Long Term Capital Holdings LP v. United States*, 330 F. Supp. 2d 122, 209-11 (D. Conn. 2004), *aff'd*, 150 F. App'x 40 (2d Cir. 2005).

In applying the "reasonable cause" provision of section 6651(a)(1) to the claimed reliance on legal advice here, we think it appropriate to borrow the relevant component of the IRS's formal regulatory implementation of "reasonable cause" in the closely analogous setting of section 6664(c)(1). The statutory language of "reasonable cause" is the same. That language readily permits an interpretation that asks if the basis for the advice clears a threshold of reasonableness. There is no contrary settled legal meaning, as indicated by the disparate authorities about "reasonable cause" noted by the Supreme Court in *Boyle*, 469 U.S. at 251 n.9. And the IRS regulation that directly applies to section 6651, *i.e.*, 26 C.F.R. § 301.6651-1(c), contains nothing addressed to reliance on counsel's advice about filing that runs counter to the standard set out in 26 C.F.R. § 1.6664-4(c)(1)(ii).

Focusing on the objective reasonableness of the advice in the present context makes good sense, given the likely practical consequences of doing otherwise. If legal advice eliminated the statutory penalty even when it rested on unreasonable legal assumptions, there would be a substantial risk of abuse by taxpayers—a risk that taxpayers would secure baseless advice as protection against penalties. We have recognized the danger that taxpayers will be tempted to seek, and would be able to secure, advice that is "too good to be true," *i.e.*, based on assumptions that are simply unreasonable. *Stobie*, 608 F.3d at 1383. After all, it is quite unlikely that the lawyer will be penalized for giving such advice; and if the advice excuses the IRS penalty against the taxpayer, the taxpayer will have suffered no harm on which to base a claim against the lawyer for bad advice. *Boyle v. United States*, 710 F.2d

1251, 1252 (7th Cir. 1983) (Posner, J., dissenting), *rev'd*, 469 U.S. 241 (1985).[2]

For that reason, there is a substantial risk of weakening the threat of penalty—whose imposition is mandatory unless there is reasonable cause, 26 U.S.C. § 6551(a)(1)—that Congress deemed important to the proper functioning of the tax system. The result would be to harm the United States' interest in proper application of its tax statutes, which insist on strict filing dates for returns. As the Supreme Court said in *Boyle*, the United States "should not have to assume the burden" of "standard[s] [that] would risk encouraging a lax attitude toward filing dates." 469 U.S. at 249.

At the same time, "one does not have to be a tax expert to know that tax returns have fixed filing dates"—that "tax returns imply deadlines." *Id.* at 251. And under an objective-reasonableness standard, the burden of a penalty imposed directly on the taxpayer who nevertheless errs by following substandard legal advice may not ultimately fall on the taxpayer. Counsel's advice that is not just incorrect but objectively unreasonable would

---

[2]  In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), the Supreme Court expressed a related concern in addressing what it viewed as the dissent's approach to a statutory provision providing immunity for debt collectors from certain statutory violations. It worried that, under that approach, "nonlawyer debt collectors could obtain blanket immunity for mistaken interpretations of the [statute] simply by seeking the advice of legal counsel." *Id.* at 602. In response, apparently recognizing the same concern, the dissent clarified that its approach protected only "a debt collector who relies in good faith on the *reasonable* [though mistaken] advice of counsel." *Id.* at 620 (Kennedy, J., dissenting) (emphasis added).

often come within the usual standards for imposing malpractice liability when it causes harm to the client. *See, e.g.*, *Smith v. Lewis*, 13 Cal. 3d 349, 360, 530 P.2d 589, 596 (1975) (legal malpractice liability where attorney's advice did not withstand even "minimal research into either hornbook or case law"); *Dawson v. Toledano*, 109 Cal. App. 4th 387, 397, 134 Cal. Rptr. 2d 689, 696 (2003) ("[T]he crucial inquiry is whether [the attorney's] advice was so legally deficient when it was given that he may be found to have failed to use 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise.'"); 3 R. MALLEN, J. SMITH, & A. RHODES, LEGAL MALPRACTICE § 24:5 (2014 ed.) (attorney liable for loss caused by client's reliance on negligent advice; "the issue is not whether lawyer's 'advice and conclusions were *legally correct*, but whether they were *reasonable*'") (internal citation omitted). To that extent, under an objective-reasonableness standard, the concrete responsibility for unreasonable advice that leads to a late filing and consequent penalty would fall on the adviser, while the United States is broadly protected by the maintenance of the strong incentive for timely filing provided by the threat of penalty.

A recent decision of the Ninth Circuit supports applying an objective-reasonableness standard to section 6651(a)(1). In *Knappe v. United State*s, 713 F.3d 1164 (9th Cir. 2013), the executor of an estate—relying on the advice of a tax professional, an "expert accountant"—mistakenly believed that it was possible to request a 12-month extension of the filing deadline and, therefore, did not file by the actual due date, leading the IRS to impose a penalty under section 6651(a)(1). The Ninth Circuit, after examining the relevant IRS form and section of the Internal Revenue Code, concluded that "[t]he deadlines here brook no debate." *Id.* at 1173. The question of whether "an extension was available was not a 'debatable' one," and "for that reason," the executor "cannot show

reasonable cause to excuse his late filing," despite the executor's reliance on the (ultimately mistaken) advice of a tax professional. *Id.* That aspect of the Ninth Circuit decision, however it relates to *Knappe*'s discussion of "the line between substantive and nonsubstantive advice," *id.*, supports the application of an objective-reasonableness standard in assessing reliance on counsel's advice as an asserted ground of "reasonable cause" for a late filing of an estate-tax return.

What constitutes a sufficiently plausible grounding in tax law should depend on the complexity of the matter. But this case is at the simple end of the spectrum of complexity. The taxpayer has a "fixed and clear" duty "to ascertain the statutory deadline and then to meet that deadline." *Boyle*, 469 U.S. at 246. The Court of Federal Claims found no support in tax law for special counsel's advice that, even after Mrs. Liftin became a naturalized United States citizen in August 2005, the estate could continue to wait until the other "ancillary matters" were resolved. As explained in the trial court, the advice rested entirely on the assumption that the return could be delayed until the ancillary matters were resolved because a fully "accurate" return could not be filed until then. The trial court held that there was no basis in tax law for the assumption that incomplete information justified delay in filing the estate-tax return. *Liftin*, 111 Fed. Cl. at 22 n.9 ("the law is clear that the need to file an accurate return cannot constitute reasonable cause for late filing"). The executor here does not defend that assumption's reasonableness.

We likewise conclude that the assumption is simply unreasonable. An IRS regulation, specifically addressing the possibility of incomplete information, declares that "[a] return as complete as possible must be filed before the expiration of the extension period," adding that, while the return may not be "amended" once the extension period ends, "supplemental information may subsequently

be filed that may result in a finally determined tax different from the amount shown as the tax on the return." 26 C.F.R. § 20.6081-1(d). And courts have long rejected assertions that incompleteness of information excused the missing of a filing deadline, for estate-tax and other returns. *E.g.*, *Ferguson v. Comm'r*, 568 F.3d 498, 501 (5th Cir. 2009) (upholding Tax Court rejection of such assertion); *In re Craddock*, 149 F.3d 1249, 1257 (10th Cir. 1998) (rejecting excuse and explaining that "[a] tax return does not have to be completely accurate, but must be based on the best information available"); *Estate of Young v. United States*, No. 11-11829, 2012 WL 6585327, at *3 (D. Mass. Dec. 17, 2012) ("[T]he Estate has an obligation to file a timely return with the best available information. It cannot claim reasonable cause based on advice that it was necessary to wait for complete information before filing a return."); *Russell v. Comm'r*, 101 T.C.M. (CCH) 1363, 2011 WL 1314673, at *8 (2011); *Estate of Cederloff v. United States*, No. 08-2863, 2010 WL 3548901, at *3-4 (D. Md. Sept. 10, 2010); *Jacobson v. Comm'r*, 86 T.C.M. (CCH) 204, 2003 WL 21752458, at *2 (2003); *Estate of Maltaman v. Comm'r*, 73 T.C.M. (CCH) 2162, 1997 WL 90606, at *5 (1997); *Crocker v. Comm'r*, 92 T.C. 899, 913-14 (1989); *Estate of Vriniotis v. Comm'r*, 79 T.C. 298, 311 (1982); *Duttenhofer v. Comm'r*, 49 T.C. 200, 206-07 (1967), *aff'd*, 410 F.2d 302 (6th Cir. 1969). Whatever an objective-reasonableness standard might mean in other circumstances, it is not met by the advice in this case that the executor could wait until various "ancillary matters" were resolved, even after Mrs. Liftin obtained citizenship.

In the circumstances of this case, the executor lacked reasonable cause under section 6651(a)(1) to rely on the filing-deadline advice of counsel.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Federal Claims.

No costs.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**MORTON LIFTIN, the Estate of,**
**JOHN LIFTIN, Executor,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5103

---

Appeal from the United States Court of Federal Claims in No. 10-CV-0589, Judge George W. Miller.

---

NEWMAN, *Circuit Judge,* dissenting.

The Liftin Estate tax return was filed late, after a delay resulting from the time required for Mrs. Liftin to obtain United States citizenship and to resolve other estate issues. However, the estimated estate tax of $877,300 had been paid two years earlier, as provided by statute, before any late-filing penalty could accrue. Nonetheless, the IRS levied the same 25% late-filing penalty as if no payment of estimated tax had been made. My colleagues on this panel agree with this outcome.

With all respect to my colleagues, they are incorrect. The role of the estimated tax payment is to avert the imposition of a penalty. No statute or regulation provides that the nonpayment penalty accrues for the period after

full payment of the estimated tax. The statute explicitly bars such assessment. It is incongruous to levy a penalty for late payment of a tax that had been timely and fully paid two years earlier, before the penalty period accrued.

Nonetheless, my colleagues hold that the 25% penalty is incurred as if no estimated tax had been paid. On January 16, 2004 the Estate paid (overpaid) an estimated tax of $877,300.[1] Also on January 16, 2004, the IRS responded to the Estate's November 2003 written request and notified the Estate that the time for filing the return was extended to June 2, 2004; the time for paying the tax was also extended to June 2, 2004.

Mrs. Liftin duly proceeded with the naturalization process, and the record states that there were disputes arising from a prenuptial agreement. In October 2004, the IRS inquired as to why the Estate had not filed its tax return, and tax counsel responded that the Estate planned to delay the filing until Mrs. Liftin became a naturalized citizen so that it could claim the marital deduction, as provided by statute. The IRS did not respond to this letter.

-----

[1]    The Estate's tax counsel calculated the estimated tax in three ways. The first calculation assumed that the Estate would elect I.R.C. §2056A's qualified domestic trust (QDOT) provisions. The second calculation assumed that Mrs. Liftin would become a naturalized U.S. citizen prior to filing the return, I.R.C. §2056(d)(4), such that the Estate could claim a marital deduction under I.R.C. §2056(a). The third calculation assumed the Estate could claim neither the benefit of the QDOT provisions nor a marital deduction. The Estate paid its estimated tax to the IRS on January 16, 2004 based on the third (the highest) estimated tax calculation.

On May 9, 2006, the Estate filed its estate-tax return, reporting a tax of $678,572.25, citing the estimated tax payment of $877,300, stating that no tax was due and requesting refund of the overpayment of $198,727.75. The IRS then assessed a late-filing penalty of $169,643.06, measured as 25% of the reported tax. The Estate filed an administrative "Claim for Refund and Request for Abatement" of the penalty. The IRS abated and refunded $33,928.61, leaving a penalty assessment in the amount of $135,714.45.

On appeal to the Court of Federal Claims, the Estate pointed out that the entire tax liability was met by the estimated tax payment. The court sustained the penalty, finding that although the delay in filing during the citizenship process could be excused, the delay while the "ancillary matters" relating to the prenuptial agreement were resolved was not excused. The court held that it was irrelevant that the full estimated tax had been timely paid over two years earlier, and that the penalty was appropriate.

## DISCUSSION

Although in this case the statute is sufficiently clear, if ambiguity arises in interpretation of the tax law, the Supreme Court has established that tax laws are construed "most strongly against the government and in favor of the citizen":

> In the interpretation of statutes levying taxes it is the established rule not to extend their provision, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt, they are construed most strongly against the government, and in favor of the citizen.

*Gould v. Gould*, 245 U.S. 151, 153 (1917).

This rule takes additional force when interpreting a tax penalty statute: "We are here concerned with a taxing Act which imposes a penalty. The law is settled that 'penal statutes are to be construed strictly,' and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it.'" *Comm'r v. Acker*, 361 U.S. 87, 91 (1959) (quoting *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954); *Keppel v. Tiffin Sav. Bank*, 197 U.S. 356, 362 (1905)).

The Estate paid estimated tax in excess of its actual tax liability, and so there was no unpaid tax. And yet, my colleagues hold that the penalty is incurred, whether or not the full tax was paid two years earlier. The penalty statute contravenes this holding.

The penalty statute contains several subparts. The government's brief initially cited only I.R.C. §6651(a)(1):

§6651(a)(1) In the case of failure—

to file any return . . . on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

The next statutory provision is directed to the penalty of subsection (a)(1) when the taxpayer has paid all or some of the tax liability before the due date for the return:

§6651(b)(1) Penalty imposed on net amount due.—

For purposes of—

> subsection (a)(1), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return.

Although the IRS states that the penalty is for late filing, not for late payment, the statute is directed to "the amount of tax required to be shown on the return", which is "no amount" when the tax has been paid as estimated tax, as illustrated in *James v. Comm'r*, 40 T.C.M. (CCH) 45 (1980):

> The imposition of the section 6651(a)(1) penalty is upon the amount required to be shown as tax on such return. Consequently, if there is no amount required to be shown as tax on the return (as in some cases of excess withholdings, **estimated tax payments**, or net operating loss carryovers), then there can be no penalty.

(emphasis added). Further elaboration is provided in *Mischel v. Comm'r*, 74 T.C.M. (CCH) 253 (1997), the Tax Court explaining that when no tax is due, and thus no amount required to be shown on the return, there is no penalty for additional tax, for "[t]he addition is based on the amount required to be shown as tax on the return."

That is the situation here. The Estate paid "estimated tax payments" in excess of its actual tax liability, whereby "there can be no penalty." *James*, 40 T.C.M. (CCH) at 45. The Estate's tax return shows an overpayment of $198,727.75 and thus a negative balance due; the amount of tax and overpayment are not disputed. Applying §6651(b)(1), the penalty calculated pursuant to §6651(a)(1) is zero because the "amount required to be shown as tax on such return" was zero.

The government argues that §6651(b)(1) should be interpreted to exclude all extensions, even when there is an explicit extension for payment of the tax. Thus the government argues that because the Estate's estimated tax payment was made after the original due date, §6651(b)(1) does not apply. Such a statutory interpretation is without support. I further observe that even on this interpretation, the Estate paid its estimated tax only a few days after the initial unextended due date, whereas the 25% penalty is calculated on a minimum five months of non-payment.

The IRS argues, and my colleagues agree, that the full penalty is due as if no estimated tax at all had been paid at any time. Such statutory interpretation renders meaningless the provisions for extension of time as well as the purpose of permitting and requiring estimated payments although the tax return is filed later. It cannot be correct to interpret the statute as imposing a penalty of 25% of the tax that was already paid. This position contradicts the legislative record for §6651, for both the House and Senate Reports explain that the penalty is based on the tax due on the return, not the amount previously estimated and paid:

> Subsection (b) of this section [6651] provides that the addition to the tax will be computed on the net amount due on the return rather than on the gross amount of the tax required to be shown on the return. This provision is important in the case of income tax where a large part of the amount of the tax shown on the return may have been prepaid through declaration of the estimated tax or through income tax withholdings.

H.R. Rep. No. 83-1337, at 419 (1954); S. Rep. No. 83-1635, at 591 (1954).

Thus §6651(b) bars a penalty for late-filing when the tax was "prepaid through declaration of the estimated

tax," *id.* Here the IRS was already in possession of the entire tax owed, plus a large overpayment. The Supreme Court's statement in *Gould v. Gould* warrants repetition: "In case of doubt, [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen." 245 U.S. at 153.

From my colleagues' contrary ruling, I respectfully dissent.